1  ADAM R.F. GUSTAFSON                          ERIC GRANT
   Principal Deputy Assistant Attorney General   United States Attorney
2                                                Eastern District of California
   PETER M. TORSTENSEN, JR.
3  Deputy Assistant Attorney General

4  DUSTIN J. WEISMAN (CO Bar #44818)
   JOHN K. HEISE (CA Bar #331615)
5  Trial Attorneys
   Natural Resources Section
6  Environment and Natural Resources Division
   U.S. Department of Justice
7  950 Pennsylvania Avenue, NW
   Washington, DC 20530
8  Telephone: (303) 844-1369
   Telephone: (202) 598-3312
9  Facsimile: (303) 844-1350
   Email: dustin.weisman@usdoj.gov
10 Email: john.heise@usdoj.gov

11 *Attorneys for the United States*

12              **UNITED STATES DISTRICT COURT**

13              **EASTERN DISTRICT OF CALIFORNIA**

14                  **SACRAMENTO DIVISION**

15

16 UNITED STATES OF AMERICA,              Case No. _____

17         Plaintiff,                     **COMPLAINT FOR DECLARATORY AND
                                          INJUNCTIVE RELIEF**
18         v.

19 STATE OF CALIFORNIA; GAVIN NEW-
   SOM, Governor of the State of California, in his
20 official capacity; CALIFORNIA GEOLOGIC
   ENERGY MANAGEMENT DIVISION, an
21 agency of the State of California; and DOUG
   ITO, State Oil and Gas Supervisor, in his official
22 capacity.

23         Defendants.

24

25

26

27

28

   Complaint                                                        1

The United States of America ("United States") brings this civil action against Defendant the State of California, its Governor, Gavin Newsom, the California Geologic Energy Management Division, and the State Oil and Gas Supervisor, Doug Ito, on behalf of the United States Department of the Interior, Bureau of Land Management ("BLM"), seeking declaratory and injunctive relief and alleges as follows:

## INTRODUCTION

1.    California Senate Bill 1137 ("SB 1137") restricts fossil fuel development activities within California on lands owned by the United States including those subject to federal oil and gas leases issued by the BLM under the Mineral Leasing Act ("MLA") and other federal authorities. In doing so, California impermissibly "attempt[s] to substitute its judgment for that of Congress." *Ventura Cnty. v. Gulf Oil Corp.*, 601 F.2d 1080, 1084 (9th Cir. 1979), *aff'd sub nom. Ventura Cnty. v. Gulf Oil Corp..*, 445 U.S. 947 (1980).

2.    By outright prohibiting or severely restricting fossil fuel operations within 3,200 feet (approximately one kilometer) of "sensitive receptors," SB 1137 effectively nullifies vested federal lease rights, reduces or eliminates payments to the United States in the form of royalties and other payments, intrudes upon the United States' management of its lands, and substantially obstructs federal policies encouraging the responsible development of natural resources.

3.    SB 1137 is thus preempted by federal law, violates the Supremacy Clause, infringes the constitutional authority of the United States to manage federal lands and mineral resources under the Property Clause and other provisions of federal law, including the MLA and the Federal Land Policy and Management Act ("FLPMA"), and violates the intergovernmental immunity doctrine. That obstruction is contrary to the Constitution and laws of the United States and is therefore invalid.

4.    The United States therefore brings this action against California, its Governor, its Geologic Energy Management Division, and its State Oil and Gas Supervisor (collectively, "Defendants") for declaratory and injunctive relief to prevent enforcement of SB 1137 as applied to federal oil and gas leases and lands.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345.

6.      This Court has authority to provide the relief requested under the U.S. Constitution, 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent legal and equitable powers.

7.      The United States has standing to vindicate its sovereign, proprietary, and parens patriae interests. The United States' sovereign interests include ensuring that states do not interfere with federal law, including the MLA and FLPMA, or with Congress' exclusive authority over federal lands and national energy policy. The United States' proprietary interests include its economic interests in revenue from federal mineral leases. And the United States has parens patriae standing to protect the economic well-being of its citizens and the national energy market from California's attempts to impose excessive burdens on fossil fuel development, which will likely raise energy costs for consumers nationwide and disrupt the uniform regulation of fossil fuel production. These harms affect a substantial segment of the population, and individual litigants cannot fully address the economic and constitutional injuries caused by California's overreach.

8.      This Court has personal jurisdiction over Defendants because they reside in, or conduct a substantial portion of their official business in, California. *See* Fed. R. Civ. P. 4(k)(1).

9.      Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391 because at least one Defendant resides in the District and because a substantial part of the acts giving rise to this suit occurred within the district, including the administration and enforcement of the challenged statute by state officials and agencies headquartered in Sacramento.

**PARTIES**

10.      Plaintiff is the United States of America, suing on its own behalf, on behalf of its citizens, and on behalf of its executive departments and other subdivisions, including, but not limited to, those listed below.

11.      The Department of the Interior (the "Department") is a federal executive department charged by Congress with the responsibility to manage land owned by the United States and to permit fossil fuel development. The Department manages millions of acres of such land through its component bureaus, including the BLM.

12. Defendant State of California is a state of the United States. Through its legislature and executive agencies, California has enacted and is enforcing the statute challenged here.

13. Defendant Gavin C. Newsom is the Governor of the State of California. He is sued in his official capacity.

14. The California Geologic Energy Management Division ("CalGEM") is a subcomponent of the California Department of Conservation. CalGEM, manages oil, gas, and geothermal industries in the State and is charged with enforcement of SB 1137. CalGEM is headquartered in Sacramento.

15. Defendant Doug Ito is the State Oil and Gas Supervisor, the head of CalGEM. He is sued in his official capacity.

## ALLEGATIONS AND APPLICABLE LAW

### The Federal Oil and Gas Leasing Framework

16. The Property Clause of the U.S. Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. In our constitutional system, the "power over the public land thus entrusted to Congress is without limitations." *United States v. City & Cnty. of S.F.*, 310 U.S. 16, 29 (1940).

17. The Mineral Leasing Act of 1920, 30 U.S.C. § 181 *et seq*., established a type of mineral category called "leasable" minerals. Under the MLA, deposits of oil and gas are made subject to disposition through a leasing process. This leasing process allows the Secretary of the Interior, through the BLM, to maintain title to the land and establish the type of lease, the duration of the lease, acreage limitations, royalty and rental terms, and other terms and conditions.

18. The Mineral Leasing Act for Acquired Lands of 1947, 30 U.S.C. §§ 351 *et seq.*, extended the mineral leasing laws (including the MLA) to all lands acquired by the United States. The Act allowed the United States to maintain title to the land and establish lease terms for all minerals found on acquired land.

19. As amended, the MLA reflects a national policy "to foster and encourage private enterprise in … the orderly and economic development of domestic mineral resources, reserves,

and reclamation of metals and minerals to help assure satisfaction of industrial, security, and environmental needs." 30 U.S.C. § 21a.

20.    Leases issued under the MLA confer the right to explore for, drill, and produce oil and gas on public lands, subject to applicable federal regulations and lease stipulations. 30 U.S.C. § 226.

21.    Congress has set a national minimum bid of $10 per acre for onshore federal oil and gas leases. 30 U.S.C. § 226(b)(1)(B).

22.    The royalty rate for oil and gas produced from federal onshore leases is based on the production amounts, the lease royalty rate, and the value of the product. *See* 30 U.S.C. § 226(b)(1)(A). The royalty rate is a percentage of the value of the production removed or sold from the leased lands and there is a statutory minimum of between 12.5 and 16.67 percent for oil and gas, depending on when the lease was entered. *Id*. In general, all production is subject to royalty payments, except in limited cases where royalty payments are statutorily or administratively waived for policy reasons, for unavoidably lost production, or for production used on or for the benefit of the lease. *See* 30 U.S.C. § 209.

23.    The Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq*., establishes a framework for the multiple-use management of public lands, including the orderly and efficient development of mineral resources. In FLPMA, Congress declared "that it is the policy of the United States that … the public lands be managed in a manner which recognizes the Nation's need for domestic sources of minerals." 43 U.S.C. § 1701(a)(12).

24.    Under these statutes, the Federal Government maintains primary authority to regulate operations conducted on federal leases, including establishing safety, environmental protection, and resource conservation requirements. 30 U.S.C. §§ 189, 195, 225, 226.

**The Supremacy Clause, Federal Preemption, and Intergovernmental Immunity**

25.    The Supremacy Clause of the U.S. Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

26.     The underlying rationale of the preemption doctrine is that the Supremacy Clause invalidates state laws that "interfere with, or are contrary to[,] the laws of Congress." *Gibbons v. Ogden,* 22 U.S. 1, 211 (1824); *accord, Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311 (1981).

27.     Federal preemption occurs in two primary ways. First, where Congress has expressed an intent—either explicitly or implicitly—to occupy an entire field of regulation, state law in that field is precluded. *See Ray v. Atl. Richfield Co.*, 435 U.S. 151 (1978).

28.     Second, even absent field preemption, a state law is preempted if it conflicts with federal law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Evidence of pre-emptive purpose" must be "sought in the [relevant statute's] text and structure." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). "States [are] devoid of power to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." *Nash v. Fla. Indus. Comm'n*, 389 U.S. 235, 239 (1967) (cleaned up). Because federal land-use regulations are not in a field traditionally subject to state regulations, *see* U.S. Const. art VI, cl. 2, "[t]he conflict with federal policy need not be as sharp as that which must exist for ordinary pre-emption." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988).

29.     The doctrine of intergovernmental immunity—closely tied to the Supremacy Clause and preemption—provides that states may not regulate or interfere with the federal government or those with whom it deals. *See M'Culloch v. Maryland*, 17 U.S. 316, 317 (1819). A state law is invalid if it directly regulates the federal government or discriminates against it or its contractors. *See North Dakota v. United States*, 495 U.S. 423, 435 (1990). This principle applies even if a law does not expressly name the federal government as its object. *See United States v. California*, No. 2:18-cv-721-WBS-DB, 2018 WL 5780003, at *4 (E.D. Cal. Nov. 1, 2018).

30.     Though states may enact generally applicable public health and environmental laws, such laws are preempted if they conflict with federal statutes, frustrate federal objectives, or interfere with federal mineral leases. *See California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572

Complaint                                                                                                    6

1  (1987); *Ventura Cnty.*, 601 F.2d 1080; *South Dakota Mining Ass'n v. Lawrence Cnty.*, 155 F.3d

2  1005 (8th Cir. 1998); *Brubaker v. Bd. of Cnty. Comm'r, El Paso Cnty.*, 652 P.2d 1050 (Colo. 1982).

3  **SB 1137**

4      31.    SB 1137 (2022 Cal. Stat. Ch. 365, § 1) was signed into law by Defendant Newsom

5  on September 16, 2022. A true and correct copy of SB 1137 is attached hereto as Exhibit 1.

6      32.    On January 1, 2023, the State began initial implementation, and CalGEM stopped

7  approving new well permits within Health Protection Zones ("HPZs"), which the statute defines as

8  the area within 3,200 feet of residences, schools, healthcare facilities, or other locations or facilities

9  that the statute deems "sensitive receptors."

10      33.    On February 3, 2023, implementation of the law was temporarily suspended due to

11  an industry-led referendum challenge.

12      34.    The referendum was withdrawn on June 27, 2024, and SB 1137 went into effect on

13  June 28, 2024.

14      35.    Section 2 of SB 1137 added Sections 3280 through 3291 to the California Public

15  Resources Code.

16      36.    Section 3281(a) states that CalGEM "shall not approve any notice of intention under

17  Section 3203 within a health protection zone," except to "prevent or respond to a threat to public

18  health, safety, or the environment," to "comply with a court order finding that denying approval

19  would amount to a taking of property, or a court order otherwise requiring approval of a notice of

20  intention," or to "plug and abandon or reabandon a well, including an intercept well necessary to

21  plug and abandon or reabandon a well."

22      37.    Section 3203 provides the required procedure for filing and approving a notice of

23  intention to commence drilling.

24      38.    Section 3281(b) states, "No new production facilities shall be constructed or oper-

25  ated in a health protection zone unless associated with a notice of intention approved pursuant to

26  subdivision (a) or as determined by the division to be necessary to protect public health and safety."

27      39.    "Production facility" means "any equipment attendant to oil and gas production or

28  injection operations including, but not limited to, tanks, flowlines, headers, gathering lines,

wellheads, heater treaters, pumps, valves, compressors, injection equipment, and pipelines that are not under the jurisdiction of the State Fire Marshal pursuant to Section 51010 of the Government Code." Cal. Pub. Res. Code § 3010.

40.    Section 3280(b) defines a "health protection zone" as "the area within 3,200 feet of a sensitive receptor."

41.    Section 3280(c) establishes a "sensitive receptor" as:

"(1) A residence, including a private home, condominium, apartment, and living quarter.

(2) An education resource, including a preschool, school maintaining transitional kinder-garten, kindergarten, or any of grades 1 to 12, inclusive, daycare center, park, playground, university, and college. Where a university or college is the only sensitive receptor within 3,200 feet of the operator's wellheads or production facilities, the university or college is not a sensitive receptor if the operator demonstrates to the division's satisfaction that no building with nominal daily occupancy on the university or college campus is located within 3,200 feet of the operator's wellheads or production facilities.

(3) A community resource center, including a youth center.

(4) A health care facility, including a hospital, retirement home, and nursing home.

(5) Live-in housing, including a long-term care hospital, hospice, prison, detention center, and dormitory.

(6) Any building housing a business that is open to the public."

42.    Along with the prohibitions in Section 3281, Sections 3282, 3283, 3284, 3285, and 3286 impose requirements for "all oil or gas production facilities or wells with a wellhead within a health protection zone." These include enhanced leak detection, continuous emissions monitoring, dust control measures, noise restrictions, and other requirements.

43.    According to CalGEM, operators' non-compliance with SB 1137 and its emergency implementation regulations may result in enforcement action. *See* FAQ for Local Government and Planning Bodies on SB 1137, https://www.conservation.ca.gov/calgem/Pages/SB1137-FAQ.aspx (last visited December 2, 2025). The statute's provisions are enforceable through criminal and civil

penalties under existing law, with violations constituting misdemeanors. Cal. Pub. Res. Code §§ 3236-3236.6.

44.     SB 1137 does not provide exceptions for federal lands or leases. Cal. Pub. Res. Code § 3281(a).

### Effect of SB 1137 on Federal Leases and Operations

45.     The United States possesses title to tens of millions of acres in California, including mineral estates.

46.     Under California property law, "the owner of the oil and mineral estate has a right to enter upon the surface of the property and make such use thereof as is reasonably required for the enjoyment of his estate therein." *Wall v. Shell Oil Co.*, 209 Cal. App. 2d 504, 511 (Cal. Dist. Ct. App. 1962); *see Dabney-Johnston Oil Corp. v. Walden*, 4 Cal. 2d 637, 649-50 (Cal. 1935); *Union Oil Co. of Cal. v. Cnty. of Ventura*, 116 Ca. Rptr. 13, 14-15 (Cal. Ct. App. 1974).

47.     The United States, through BLM, currently administers an estimated 616 oil and gas leases within California on federal lands and mineral estates. At least about 202 of those leases are impacted by Verified Health Protection Zones ("HPZs") (35.4% of leases), with about 16 additional leases impacted by Potential HPZs. *See* Exhibits 2-7. In total, about 218 leases—over a third of all federal leases in California—encompassing tens of thousands of acres, overlap with a Verified or Potential HPZ. Some federal leases are entirely within HPZs.

48.     Sections 3281(a)-(b) attempt to prevent fossil fuel development on federal land by categorically denying state permits to lessees whose fossil fuel development would occur within an HPZ.

49.     SB 1137's requirements and operational mandates apply regardless of existing mineral rights, federal lease rights, or prior permitting approvals. Sections 3281(a)-(b) thus effectively nullify or severely impair the exercise of valid property interests and federally authorized leasehold rights on federal lands within large portions of California.

50.     Despite having obtained federal leases under the MLA and other federal authorities, operators are now prohibited or severely restricted from accessing and developing fossil fuel resources within an HPZ.

51.     For operators holding federal oil and gas leases within HPZs, compliance with §§ 3281(a)-(b) is, in most if not all cases, impracticable, economically infeasible, or functionally impossible. The operational constraints prevent the reasonable development of underlying fossil fuel resources, rendering the federal leases effectively valueless or significantly diminished in value.

52.     Operators holding federal oil and gas leases that are not currently within HPZs are also negatively impacted. Any lease—even one currently not within HPZs—can be swept into an HPZ if a "sensitive receptor" is later established nearby, and partial HPZ coverage can quickly become total. This risk discourages operators from bidding on federal leases, lowers the amount they are willing to bid, and discourages operators from making investments to develop leases they possess.

53.     Fossil fuel resources outside of HPZs also become undevelopable because operators often must place infrastructure within an HPZ to support production outside of HPZs, and SB 1137 §§ 3281(a)–(b) categorically bar such infrastructure where a Notice of Intention is required—which is true for most infrastructure.

54.     Further, §§ 3281(a)-(b) substantially interferes with federal objectives to promote the orderly and efficient development of fossil fuel resources on public lands, frustrates valid existing leasehold rights, and unlawfully burdens activities authorized and regulated under federal law.

## CLAIMS FOR RELIEF

### COUNT I

### Preemption by Federal Law

55.     The United States incorporates by reference all allegations stated above and below this section.

56.     The Supreme Court has described Congress' power over federal lands as "without limitation." *City & Cnty. of S.F.*, 310 U.S. at 29. As the Supreme Court explained in *Kleppe*, "[a]bsent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands

1    pursuant to the Property Clause …. And when Congress so acts, the federal legislation necessarily

2    overrides conflicting state laws under the Supremacy Clause." *Kleppe v. New Mexico*, 426 U.S.

3    529, 543-44 (1976).

4         57.    The Supremacy Clause of the U.S. Constitution establishes that federal statutes

5    override conflicting state laws. U.S. Const. art. VI, cl. 2.

6         58.    A state law is preempted under the Supremacy Clause when it intrudes into a field

7    exclusively occupied by federal law (field preemption) or when it conflicts with federal law (con-

8    flict preemption). *See City of Milwaukee v. Illinois*, 451 U.S. 304, 316-17 (1981) (field preemption);

9    *Arizona*, 567 U.S. at 399 (conflict preemption). "Evidence of pre-emptive purpose" must be

10   "sought in the [relevant statute's] text and structure." *CSX Transp., Inc. v. Easterwood*, 507 U.S.

11   658, 664 (1993). As the Supreme Court explained in *Butte City Water Co. v. Baker*, "[s]tate … leg-

12   islation … must be entirely consistent with the Federal laws, otherwise it is of no effect." 196 U.S.

13   119, 125 (1905). Because federal land-use regulations are not traditionally subject to state regula-

14   tions, *see* U.S. Const. art VI, cl. 2, "[t]he conflict with federal policy need not be as sharp as that

15   which must exist for ordinary pre-emption." *Boyle*, 487 U.S. at 507.

16        59.    When addressing conflict preemption, the Supreme Court has distinguished between

17   two forms of regulation, noting that "[l]and use planning in essence chooses particular uses for the

18   land," but "environmental regulation, at its core, does not mandate particular uses of the land but

19   requires only that, however the land is used, damage to the environment is kept within prescribed

20   limits." *Granite Rock*, 480 U.S. at 587. The former is impermissible while the latter could be per-

21   missible. *See id*.

22        60.    Although Congress has not explicitly barred California from enacting all regulations

23   affecting federal lands, that does not mean SB 1137 § 3281(a)-(b) is permissible. As the Eighth

24   Circuit emphasized in *South Dakota Mining Association*, "[a] local government cannot prohibit a

25   lawful use of the sovereign's land that the superior sovereign itself permits and encourages." 155

26   F.3d at 1011. A prohibition of that nature "offends both the Property Clause and the Supremacy

27   Clause," *id.*, and allowing it "would place the public domain of the United States completely at the

28   mercy of state legislation," *Kleppe*, 426 U.S. at 543.

Complaint                                                                                          11

61.    For example, in *South Dakota Mining Association*, the court concluded that a county ordinance banning surface mining—even on federal land—was "prohibitory, not regulatory, in its fundamental character," and thus unconstitutional. *South Dakota Mining Ass'n*, 155 F.3d at 1011.

62.    Sections 3281(a)-(b) go far beyond permissible environmental regulation. Rather than setting reasonable conditions on how fossil fuel development may occur, they categorically prohibit such development within HPZs—thereby barring the federal government and its lessees from using federal lands for a congressionally authorized purpose.

63.    Two key federal statutes reflect Congress' intent for the development of fossil fuels on federal lands: the MLA and FLPMA.

64.    As stated above, the MLA reflects a national policy "to foster and encourage private enterprise in … the orderly and economic development of domestic mineral resources, reserves, and reclamation of metals and minerals to help assure satisfaction of industrial, security, and environmental needs." 30 U.S.C. § 21a.

65.    To implement this policy, the MLA authorizes the Secretary of the Interior, acting through the BLM, to lease federally owned oil and gas resources for development under specified terms and conditions. 30 U.S.C. § 226(a). Such leases confer rights to explore for, drill, and produce oil and gas on public lands, subject to federal regulations and lease stipulations.

66.    Through the MLA and other statutes, Congress has expressly authorized, encouraged, and in some cases mandated the development of fossil fuel resources on federal lands. *See* 30 U.S.C. §§ 181, 226(a)-(b). In particular, Congress directed the issuance of mineral leases on qualifying federal lands, reflecting a national policy favoring responsible resource development. *See id.*

67.    Federal oil and gas leases issued by the BLM in California convey property interests in the federal mineral estate. These interests are protected under the Property Clause of the U.S. Constitution and are governed by statutes such as the MLA, which establishes a federal framework for the orderly and sustained development of mineral resources on federal lands.

68.    Sections 3281(a)-(b) effectively nullify these federal leasehold interests within areas designated by California as HPZs by prohibiting the issuance of state permits that are needed for federal lessees to exercise their development rights. By foreclosing access to necessary approvals,

§§ 3281(a)-(b) obstruct federally authorized fossil fuel development and render the rights conferred by federal leases in HPZs practically inoperative.

69.     In FLPMA, Congress declared "that it is the policy of the United States that … the public lands be managed in a manner which recognizes the Nation's need for domestic sources of minerals." 43 U.S.C. § 1701(a)(12). The term "mineral" includes oil and gas. 30 U.S.C. § 21a.

70.     FLPMA establishes a framework for the multiple-use management of public lands, including mineral development, and confirms that the federal government retains primary regulatory authority over operations conducted under federal mineral leases, including environmental, safety, and resource conservation requirements.

71.     Sections 3281(a)-(b) conflict with, frustrate, and obstruct the accomplishment of the full purposes and objectives of this federal framework by prohibiting or significantly impairing development activities on federal lands.

72.     Accordingly, §§ 3281(a)-(b) directly conflicts with the Property Clause and Congress's intent by imposing a categorical prohibition on certain fossil fuel development on federal lands located within HPZs. This sweeping restriction stands as an obstacle to the accomplishment and execution of Congress's objectives—reflected in the MLA, FLPMA, and related statutes—to promote the responsible development of fossil fuel resources on federal lands.

73.     Accordingly, §§ 3281(a)-(b) are preempted by federal law and invalid under the Supremacy Clause of the U.S. Constitution.

**COUNT II**

**Violation of Intergovernmental Immunity**

74.     The United States incorporates by reference all allegations stated above.

75.     "[S]tates have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by [C]ongress." *M'Culloch*, 17 U.S. at 317.

76.     A state law that directly regulates the federal government is invalid. *See North Dakota*, 495 U.S. at 435. This principle applies even if a law does not expressly name the federal government as its object. *See California*, 2018 WL 5780003, at *4.

1    77.    By prohibiting new fossil fuel development on federal land within HPZs, SB 1137

2    § 3281(a)-(b) effects direct regulation of the Federal Government. It unlawfully seeks to dictate

3    whether, how, and under what conditions the United States may carry out federally authorized fossil

4    fuel development on its own lands.

5    78.    Although the requirements of §§ 3281(a)-(b) apply to federal lessees, their practical

6    effect is to prevent and constrain the federal government's ability to authorize and conduct mineral

7    leasing activities on its lands. That is the type of state interference the intergovernmental immunity

8    doctrine of forbids.

9    **<u>PRAYER FOR RELIEF</u>**

10    WHEREFORE, the United States respectfully requests the Court:

11    a.  Declare that Cal. Pub. Res. Code §§ 3281(a)-(b) and associated Cal. Code Regs. tit. 14,

12    §§ 1765-1765.10—violate the Supremacy Clause of the U.S. Constitution, the Property

13    Clause of the U.S. Constitution, and the intergovernmental immunity doctrine, and are

14    therefore invalid both on their face and as applied to the United States of America, its

15    agencies, its officers, and its lessees;

16    b.  Preliminarily and permanently enjoin Defendants from taking actions to assert Cal. Pub.

17    Res. Code §§ 3281(a)-(b) and associated Cal. Code Regs. tit. 14, §§ 1765-1765.10

18    against the United States, its agencies, its officers, and its lessees;

19    c.  Award the United States its costs and fees in this action; and

20    d.  Award such other and further relief as the Court deems just and proper.

21

22

23

24

25

26

27

28

1    Dated: January 14, 2026                    Respectfully submitted,

2                                                ADAM R.F. GUSTAFSON
3                                                Principal Deputy Assistant Attorney General

4                                                PETER M. TORSTENSEN, JR.
                                                 Deputy Assistant Attorney General
5
                                                 /s John K. Heise
6                                                DUSTIN J. WEISMAN (CO Bar #44818)
7                                                JOHN K. HEISE (CA Bar #331615)
                                                 Trial Attorneys
8                                                Natural Resources Section
                                                 Environment and Natural Resources Division
9                                                U.S. Department of Justice
                                                 950 Pennsylvania Avenue, NW
10                                               Washington, DC 20530
                                                 Telephone: (303) 844-1369
11                                               Telephone: (202) 598-3312
                                                 Facsimile: (303) 844-1350
12                                               Email: dustin.weisman@usdoj.gov
13                                               Email: john.heise@usdoj.gov

14                                               ERIC GRANT
15                                               United States Attorney
                                                 Eastern District of California
16
                                                 *Attorneys for the United States*
17

18

19

20

21

22

23

24

25

26

27

28

Complaint                                                                              15

**INDEX OF EXHIBITS**

1.  California Senate Bill No. 1137 (September 16, 2022).

2.  Map: Existing Federal Leases within Health Protection Zones

3.  Map: Existing Federal Leases within Health Protection Zones; BLM Land Only

4.  Map: Overlap of HPZ and Active Wells

5.  Map: Overlap of HPZ and Active Wells; BLM Land Only

6.  Map: Bakersfield Field Office, APDs and HPZs

7.  Map: Example County, Maricopa Health Protection Zone Map