UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. 2:26−CV−00107−DC−SCR<br><br>**DECLARATION OF JEREMIAH KARUZAS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Jeremiah Karuzas, declare as follows:

1. I am the Deputy State Director for Energy and Minerals of the California State Office, Bureau of Land Management (BLM). In this position, I answer directly to the State Director and Associate State Director and am responsible for the direct oversight of the programs related to energy and mineral development within the Division of Energy and Minerals, but ultimately oversee the implementation of those programs throughout BLM California. I have direct authority for issuance of certain decisions on behalf of BLM related to oil and gas development (e.g., lease issuance/suspension/termination, transfer of ownership/operating rights), and am responsible for providing overarching guidance or direction in the management of the BLM California oil and gas program, affecting approximately 47 million acres of subsurface minerals on BLM-managed public lands in California.

2. I make this declaration in support of the United States' Motion for Preliminary Injunction. I make the statements of fact in this declaration of my own personal knowledge. If called as a witness, I could and would testify competently to the facts set forth herein.

3. I have been in my current position with BLM since December 2023. I have worked in various capacities and positions with BLM since 2014, including serving as a Branch Chief in the California State Office Division of Natural Resources and acting as BLM Palm Springs-South

1   Coast Field Manager.  In my current capacity, I am knowledgeable of oil and gas permitting and
2   activity on BLM-managed land in the State of California.

3       4.    The United States possesses title to approximately 47 million acres in California.
4   BLM currently administers an estimated 616 oil and gas leases on federal lands and mineral estates
5   in the state.  The BLM-managed leases in California cover 115,388 acres.  The oil and gas
6   produced on federal leases constitutes approximately 9 percent of all oil and gas produced in
7   California.  Oil and gas production in California brought in approximately $76 million in royalties
8   for the United States during FY24.  Oilfields in California have been well-delineated with a low
9   likelihood of identifying new major oil fields, and nearly all public land production comes from
10  leases more than 30 years old.

11      5.    To my knowledge, there are currently approximately 94,786 active (including
12  producing and idle) oil and gas wells in the State of California.  It is my understanding that the
13  vast majority are managed exclusively by the State of California's Geologic Energy Management
14  Division (CalGEM).  BLM manages approximately 12,381, or 13%, of these active wells.  Of
15  those 12,381 wells, approximately 7,372 are producing, and 5,009 are idle.

16      6.    The federal and state government both have permitting roles for wells on BLM-
17  managed land.  In order to drill and produce oil and gas, federal law requires operators to obtain
18  approvals from BLM and state law requires operators to obtain approvals from CalGEM.
19  Operators submit Applications for Permits to Drill (APDs) to BLM, which BLM reviews and may
20  approve after an on-site inspection and environmental review.  CalGEM requires operators to file
21  a Notice of Intention (NOI).  My understanding is that CalGEM then reviews for compliance with
22  state health, safety, and environmental requirements

23      7.    Over 95 percent of oil and gas activity on BLM-managed land in California occurs
24  under the direction of the BLM Bakersfield (BKFO) and Central Coast (CCFO) Field Offices.
25  Specifically, oil and gas activity is largely located in western Kern County within the BKFO.

26      8.    New BLM oil and gas leasing in California is currently paused due to a settlement
27  agreement, which arose from previous litigation that challenged the BKFO and CCFO Resource
28

Management Plans (RMPs). However, as discussed below, BLM California has begun to undertake the environmental review processes that could result in a reinitiation of leasing.

9.  To that end, BLM California is preparing a supplemental environmental impact statement (SEIS) for the BKFO. The SEIS will analyze the impacts of oil and gas leasing and development on BLM-managed public land and mineral estate in the BKFO planning area, exclusive of the California Coastal National Monument and the Carrizo Plain National Monument. The planning area is located in Fresno, Kern, Kings, Madera, San Luis Obispo, Santa Barbara, Tulare, and Ventura counties in California and encompasses approximately 400,000 acres of public land and an additional 450,000 acres of federal mineral estate.

10. Completion of the BKFO SEIS could potentially allow BLM to resume oil and gas leasing within the planning area. BLM estimates that this could result in the development of 10 to 40 new oil and gas wells per year on new leases, as described in the reasonably foreseeable development scenario for the Bakersfield RMP completed in the 2012 RMP EIS.

11. Additionally, BLM California is preparing a similar SEIS for the CCFO. The CCFO administers approximately 284,000 acres of public land and an additional 509,000 acres of federal mineral estate in Central California. The SEIS may allow oil and gas leasing and development on public lands in Alameda, Contra Costa, Monterey, San Benito, San Mateo, Santa Clara, and Santa Cruz counties, and portions of Fresno, Merced, and San Joaquin counties.

12. Completion of the CCFO SEIS could potentially allow the BLM to resume oil and gas leasing within the planning area. BLM estimates that this could result in development of up to 37 new oil and gas wells during the next 20 years, as described in the reasonably foreseeable development scenario for the CCFO completed in 2015.

13. In the absence of issuing new leases and being able to offer any new parcels for lease, BLM California continues its mission to manage existing leases, inspect drilling, ensure production accountability, conduct surface inspections, and adhere to protocol, regulations, and safety measures. Over 2,155 inspections were conducted in FY25 and 468 wells abandoned from FY24-FY25. BLM California approved approximately 80 APDs in FY25.

14. It is my understanding that California Senate Bill 1137 (SB 1137) establishes "health protection zones" (HPZs) in which most new oil and gas development and modifications to existing operations are prohibited, including development on federal lands (the "setback provision"). It is my understanding that SB 1137's setback provision contains no exemption for operations on federal lands or under federal leases.

15. It is my understanding that under SB 1137's setback provision, any lease can be covered by an HPZ if a "sensitive receptor" is later established by CalGEM nearby. Because BLM could plan additional lease sales on federal public lands, and because HPZ boundaries will likely expand with any newly identified "sensitive receptor," BLM California expects that the statute's impact on federal lands and leases will grow over time.

16. It is my understanding that under SB 1137's setback provision, federal leases BLM California already granted to operators are now barred from any additional development or workovers (i.e., work conducted on a well to restore or enhance production) of existing wells in an HPZ, which disrupts the federal government's management and policy priorities.

17. Based on calculations performed by BLM, about 202 of the federal leases BLM has issued are impacted by Verified HPZs (33%), with approximately 16 more impacted by Potential HPZs. In total, about 218 leases overlap with a Verified or Potential HPZ. Of these leases 79 lie entirely within HPZs, while the remainder are partially within them. The Verified HPZs include approximately 18,781 acres on federal leases, or 16.3% of total federal lease acreage; the Potential HPZs include 1,090 acres, or 0.9% of total federal lease acreage.

18. Within those leases, there are approximately 2,047, or 16.5% of active wells that are within HPZs.

19. Based on my knowledge and understanding of SB 1137 and BLM's oil and gas permitting process, I believe that SB 1137's setback provision is likely to inhibit oil and gas development on BLM-managed land in California.

20. As noted above, to comply with federal and state laws, operators need both an approved APD from BLM and an approved NOI from CalGEM to begin drilling and producing oil on BLM-managed land. Before SB 1137 came into effect, operators would concurrently seek

APDs from BLM and NOIs from CalGEM. For the state process, my understanding was that, although CalGEM could impose environmental restrictions, it would not prohibit drilling entirely. Now, however, my understanding is that under SB 1137's setback provision, CalGEM will deny any NOI within an HPZ barring certain narrowly defined exceptions limited to health, safety, and environmental reasons. Therefore, even if BLM has granted all approvals that an operator would need to begin drilling, CalGEM will prohibit drilling entirely within HPZs. BLM has received complaints from operators that CalGEM is not reviewing or approving NOIs for APDs that BLM has already approved in an HPZ.

21. Because SB 1137's setback provision requires CalGEM to deny NOIs within HPZs, I anticipate there will be no new development on over 33% of existing federal leases. And that figure could increase as new sensitive receptors cause additional federal leases to fall within HPZs. I further anticipate that some portion of the approximately 2,047 active wells within an HPZ will necessitate additional development or workovers in order to maintain productivity over the life of the well, which would be precluded by SB 1137's setback provision, thereby reducing productivity of existing wells.

22. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 15th day of January 2026, at the California State Office of the Bureau of Land Management, Sacramento, California.

/s/ *Jeremiah M. Karuzas*
Jeremiah M. Karuzas
(original signature retained by
Attorney John K. Heise)