# DECLARATION OF RALPH COMBS
# IN SUPPORT OF PLAINTIFF'S COMPLAINT

I, Ralph Combs, declare as follows:

1. I am the Manager of Regulatory and Government Affairs for the Termo Company ("Termo") and have held that position since June 2016. Termo is an oil and gas company that explores and develops hydrocarbons, with operations or investments in eight (8) states including California. Termo has been in business for over 90 years and operates 107 wells with twenty (20) field staff operating across fifteen (15) fields. Termo's operations include over 50 wells across a dozen fields in California, including wells on federal lands. I have over twenty years of experience in the oil and gas industry, including on projects involving regulatory compliance, environmental permitting, and operational management.

2. I make this declaration in support of Plaintiff's Complaint and motion for preliminary injunction, which I have carefully reviewed. This declaration is based on my personal knowledge. If called as a witness, I could and would testify competently to such matters.

3. I regularly attend monthly meetings between the members of the California Independent Petroleum Association ("CIPA") and the California Department of Conservation, Geologic Energy Management Division ("CalGEM").

4. On February 20, 2025, I attended one such meeting. One of the topics for the meeting was a discussion of CalGEM's position on whether permits would be required for wells located within the State of California but on federal lands—specifically lands under the jurisdiction of the federal Bureau of Land Management ("BLM").

5. During the discussion of that topic, Justin Turner, Chief Counsel to the California Department of Conservation (including CalGEM), and the California Oil and Gas Supervisor, Doug Ito, both stated that even if operators were given permits by the United States of America to drill wells on federal land, CalGEM would require operators to obtain Notices of Intention ("NOIs") from the State of California before CalGEM would issue American Petroleum Institute ("API") numbers for those wells. API numbers are necessary before a well can be made fully operational. Mr. Ito also advised attendees that CalGEM would continue to enforce statutory obligations set

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF RALPH COMBS ISO PLAINTIFF'S COMPLAINT

404388799.9

forth in California's Environmental Quality Act ("CEQA") against operators seeking to develop oil and gas resources on federal lands and would continue to act as a "responsible agency" under CEQA for any such wells, regardless of any federal approvals.

6. Mr. Turner made it clear to the attendees that CalGEM would pursue civil and potentially criminal action against any operator that commenced drilling operations on federal land prior to being issued NOIs by CalGEM for such work.

7. I understood these comments to mean that CalGEM's official position was that *any* wells in California (regardless of whether or not they were located on federal lands), needed to be approved by CalGEM, and that CalGEM would continue to enforce a number of California statutes and regulations against operators seeking to develop oil and gas resources on federal lands. CalGEM was also quite clear in its position that it would not issue any APIs for any wells located on federal lands that were also located within a Health Protection Zone ("HPZ") as defined by Senate Bill 1137[1], unless those wells qualified for an exemption to that statute. Similarly, CalGEM was quite clear that it would not issue any NOIs for wells to be drilled, maintained, or modified if those wells were located on federal lands but were also within an HPZ, unless those wells qualified for an exemption under SB 1137.

8. Termo owns or has the rights to numerous wells in California, including several that are located on federal lands under the jurisdiction of the BLM. Of these wells, at least one is located within an HPZ: USL-G 20 (Oak Canyon Oil Field, Castaic, California).

9. The hydrocarbons accessible via USL-G 20 cannot be extracted using techniques such as horizontal drilling that would allow the surface facilities to be located outside of an HPZ; the geologic formations in the area prevent access to these underground hydrocarbons via directional drilling at significant distance. Even if extraction from outside the HPZ were physically possible, it would be economically infeasible, because the high cost of such complex drilling work would not make extractions financially viable for Termo.

---

[1] Senate Bill 1137 defines a "Health Protection Zone" or "HPZ" as 3,200 feet from a "sensitive receptor," which is defined as any (1) residence, (2) school, (3) community resource center, (4) health care facility, (5) live-in housing, or (6) **any** building housing a business that is open to the public. Public Resources Code § 3280(c) (emphasis added).

10. On May 21, 2024 Termo applied to CalGEM for an NOI for well USL-G 20. CalGEM held this NOI application in abeyance, which is a standard tactic employed in situations in which CalGEM seeks to delay providing feedback or requesting additional information from an operator. In June, 2025, the well was added to Termo's Idle Well Management Plan due to its inactivity. Due to development subsequent to May 21, 2024, this well is now within 3,200 feet of a "sensitive receptor" and therefore would be deemed to be within an HPZ, and thus CalGEM would deny any NOI application for this well. To date Termo has not received an NOI for this well.

11. Termo has not applied for any additional NOIs for any wells located on federal land and within an HPZ, because of the clear representations made by CalGEM that CalGEM will not issue any NOIs for wells within an HPZ, including for wells located on federal lands, unless the well qualified for an exemption to SB 1137.

12. Termo has chosen not to pursue otherwise-viable projects—including drilling new wells and maintaining, improving, or re-working existing wells—due to the restrictions imposed by the passage of SB 1137 and the adoption of related regulations by CalGEM. In particular, Termo has grave concerns that investment in an otherwise-permitted site could be rendered useless should a new and previously non-existent "sensitive receptor" be installed within 3,200 feet of that site, creating a HPZ and foreclosing all oil and gas operations at that site.

13. Per SB 1137, any "sensitive receptor" identified within 3,200 feet of an oil and gas facility creates an HPZ around that receptor. Operators with existing wells within 3,200 feet of a newly created receptor are then unable to obtain NOIs for repairs, upgrades or other modifications necessary to keep those wells operational for their normal, decades-long economic lives. Instead, production volumes from these wells rapidly and severely decrease until the well is no longer economically viable to operate.

14. Termo has not bid on leases located on federal lands within HPZs since the enactment of SB 1137 and the adoption of related regulations, because those lands cannot be fully developed for oil and gas extraction.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of December, 2025, at Los Angeles, California.

_____
Ralph Combs