# DECLARATION OF MEGAN SCHWARTZ
# IN SUPPORT OF PLAINTIFF'S COMPLAINT

I, Megan Schwartz, declare as follows:

1. I am the Director of Regulatory Compliance and Permitting for Catalyst Environmental Solutions Corporation ("Catalyst") and have held that position since January 11, 2016. I have twenty years of experience as an environmental policy and science consultant, specializing in environmental planning and permitting. As part of my consulting work, I prepare Environmental Impact Statements/Environmental Impact Reports on behalf of government agencies, and assist clients with obtaining environmental permits, licenses, and associated compliance documents. I also direct environmental mitigation planning and implementation for both government agencies and private sector clients. Since 2008, I have routinely assisted oil and gas industry clients with projects involving regulatory compliance, environmental permitting, and identification of environmental constraints in project planning.

2. I make this declaration in support of Plaintiff's Complaint and motion for preliminary injunction, which I have carefully reviewed. This declaration is based on my personal knowledge. If called as a witness, I could and would testify competently to the matters discussed herein.

3. I regularly attend and take contemporaneous notes of monthly meetings between the members of the California Independent Petroleum Association ("CIPA") and the California Department of Conservation, Geologic Energy Management Division ("CalGEM").

4. On February 20, 2025, I attended one such meeting. One of the meeting topics was CalGEM's position as to whether CalGEM permits would be required for wells located within the State of California but on federal lands under the jurisdictional authority of the federal Bureau of Land Management ("BLM").

5. During discussion of this topic, Justin Turner, Chief Counsel to the California Department of Conservation (including CalGEM), and California Oil and Gas Supervisor, Doug Ito, both stated that even if well operators were granted permits by the United States of America to drill wells on federal lands, CalGEM would nevertheless require operators to obtain Notices of

1  Intention ("NOIs") from the State of California before CalGEM would issue American Petroleum
2  Institute ("API") numbers for those wells. API numbers must be issued before a well can become
3  operational. Mr. Ito further advised that CalGEM would take action to ensure compliance with
4  California's Environmental Quality Act ("CEQA") and would maintain its position that it was
5  authorized to act as a CEQA "responsible agency" for any such wells, regardless of any federal
6  approvals.

7  6.   Mr. Turner stated that CalGEM would pursue civil and potentially criminal action
8  against any well operator that commenced drilling operations on federal lands without first
9  obtaining NOIs from CalGEM for such work.

10  7.   I understood these comments to mean that CalGEM's official position was that any
11  wells in California, even if located on federal lands, would need to be approved by CalGEM, and
12  that CalGEM would enforce the California statutes and regulations CalGEM deemed applicable
13  against wells installed on federal lands. CalGEM made clear that it would not issue APIs, and
14  therefore refuse to permit wells to be drilled, maintained, or modified if they were located within a
15  Health Protection Zone ("HPZ") as defined by Senate Bill 1137[1], unless the well qualified for an
16  exemption to that statute, even if the well was located on federal lands.

17  8.   A true and correct copy of my contemporaneous notes from this meeting are
18  attached hereto as **Exhibit A**.

19  9.   On August 14, 2025, I participated in a meeting between CIPA's Federal Working
20  Group and staff from BLM: Joseph Stout, Gabriel Garcia, Jermiah Karuzas. Erica St. Michel, and
21  Robert Saval. The purpose of this meeting was to discuss the Memorandum of Understanding
22  ("MOU") between CalGEM and BLM and related topics, including whether and the extent to which
23  CalGEM would require wells on federal lands to be permitted by CalGEM. At that meeting, BLM
24  informed those present that CalGEM had advised BLM that CalGEM's CEQA processing staff

---

[1] Senate Bill 1137 defines a "Health Protection Zone" or "HPZ" as 3,200 feet from a "sensitive receptor," which is defined as any (1) residence, (2) school, (3) community resource center, (4) health care facility, (5) live-in housing, or (6) **any** building housing a business that is open to the public. Public Resources Code § 3280(c) (emphasis added).

1  would not review applications for wells on federal lands and in an HPZ even if those wells had
2  otherwise received all necessary approvals from the United States federal government.

3      10.    By way of these comments, CalGEM made it clear to well operators that CalGEM
4  would not review NOIs for wells located on federal land and in a HPZ and would not issue NOIs
5  for any such wells even if those wells had otherwise received all necessary approvals from the
6  United States federal government, unless the well qualified for an exemption to that statute.

7      11.    A true and correct copy of my contemporaneous notes from this meeting are
8  attached hereto as **Exhibit B**.

9      In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
10  is true and correct.

11      Executed this 18th day of December, 2025, at Los Angeles, California.

*Megan Schwartz*
Megan Schwartz