# DECLARATION OF ROCK ZIERMAN
# IN SUPPORT OF PLAINTIFF'S COMPLAINT

I, Rock Zierman, declare as follows:

1. I am a member of the Board of Directors of the Native Oil Producers and Employees of California ("NOPEC"), and I have held this position since NOPEC was founded. In my capacity as a NOPEC Director, I work closely with NOPEC's members and affiliates on all regulatory, legislative and operational aspects of their oil and gas businesses, and I have a deep understanding of these aspects of their businesses, which is necessary for my role in advocating for members' needs.

2. I make this declaration in support of Plaintiff's Complaint and motion for preliminary injunction, which I have reviewed closely. This declaration is based on my personal knowledge. If called as a witness, I could and would testify competently to such matters contained in this declaration.

3. Oil and gas production operations almost always require the installation of attendant production equipment—such as tanks, flowlines, gathering lines, wellheads, pumps, compressors, and pipelines—on lands adjacent to wells to service drilling activities and resource collection. In some cases, this attendant equipment may be located within a Health Protection Zone ("HPZ") as defined by Senate Bill 1137[1], even where the related drilling operations are located outside HPZ boundaries. SB 1137's prohibition on issuing permits to conduct oil and gas operations within an HPZ prevents operators from siting necessary infrastructure within an HPZ, including on land under the jurisdiction of the federal government, thereby rendering certain federal oil and gas resources outside HPZs unrecoverable.

4. I have been informed by NOPEC members and other oil and gas operators that some operators have chosen not to pursue otherwise-viable projects—including drilling new wells, re-drilling existing wells, or re-working existing wells—due to the uncertainty caused by the

---

[1] Senate Bill 1137 defines a "Health Protection Zone" or "HPZ" as 3,200 feet from a "sensitive receptor," which is defined as any (1) residence, (2) school, (3) community resource center, (4) health care facility, (5) live-in housing, or (6) *any* building housing a business that is open to the public. Public Resources Code § 3280(c) (emphasis added).

passage of SB 1137 and the adoption of related regulations by the California Department of Conservation, Geologic Energy Management Division ("CalGEM"). In particular, operators have expressed their reluctance to invest the necessary capital to develop in areas not presently impacted by SB 1137's HPZ because of the high likelihood that a third-party will construct a "sensitive receptor" such as a single-family home in the same area, thereby shuttering the newly developed oil production operation. This is due to the fact that, per SB 1137, any "sensitive receptor" identified within 3,200 feet of an oil and gas facility creates an HPZ, and operators are then prohibited from undertaking any repairs, modifications or upgrades to wells within the newly created HPZ. Once operators are unable to perform the foregoing types of work on a well, that well's production rapidly declines until the well becomes inoperable.

5. I have also been informed by NOPEC members and other oil and gas operators, that some operators have been deterred from considering bidding on leases located on federal lands within HPZs by the enactment of SB 1137 and the adoption of related regulations, because those lands cannot be fully developed for oil and gas extraction.

6. The passage of SB 1137 and the adoption of related regulations threaten the viability of smaller, independent operators such as NOPEC's members. These smaller, independent operator companies are critical to developing federal oil and gas leases, but often lack the capital reserves to survive prolonged production delays or costly compliance burdens. That, in turn, jeopardizes the livelihoods of employees, suppliers, contractors, and the communities that depend on, among other things, oil and gas production on federal lands within the State of California.

7. Moreover, even if the above-mentioned financial challenges were surmountable, operators would still refrain from purchasing or leasing, or seeking permits for, such wells because SB 1137 contemplates the creation of a new HPZ at any time based on the establishment of a new "sensitive receptor", creating uncertainty that ongoing activities will remain permissible. Faced with that risk, NOPEC members and other oil and gas operators simply avoid leasing or developing lands within or even near HPZs or potential HPZs altogether.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of December, 2025, at Sacramento, California.

_____
Rock Zierman