Colin C. O'Brien, State Bar No. 309413
Elizabeth A. Fisher, State Bar No. 311366
Michelle Ghafar, State Bar No. 315842
Gabriel F. Greif, State Bar No. 341537
cobrien@earthjustice.org
efisher@earthjustice.org
mghafar@earthjustice.org
ggreif@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, CA 94104
Telephone: (415) 217-2000

*Attorneys for Proposed Defendant-Intervenors*
*Food & Water Watch, Friends of the Earth,*
*Los Padres ForestWatch, and Sierra Club*

(List of counsel continued following caption)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:26-cv-00107-DC-SCR |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE** |
| STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of the State of California, in his official capacity; CALIFORNIA GEOLOGIC ENERGY MANAGEMENT DIVISION, an agency of the State of California; and DOUG ITO, State Oil and Gas Supervisor, in his official capacity, | Judge: Hon. Dena M. Coggins<br>Magistrate Judge: Hon. Sean C. Riordan<br>Hearing Date: none |
| Defendants, | |
| and | |
| CENTER FOR BIOLOGICAL DIVERSITY; FOOD & WATER WATCH; FRIENDS OF THE EARTH; LOS PADRES FORESTWATCH; and SIERRA CLUB, | |
| Proposed Defendant-Intervenors. | |

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

Victoria Bogdan Tejeda, State Bar No. 317132
Cooper Kass, State Bar No. 346472
vbogdantejeda@biologicaldiversity.org
ckass@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375
Oakland, CA 94612
Telephone: (510) 844-7100

Jason C. Rylander, DC Bar No. 474995 (pro hac vice)
jrylander@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, D.C. 20005
Telephone: (202) 849-8401

*Attorneys for Proposed Defendant-Intervenor*
*Center for Biological Diversity*

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE          2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 4

INTRODUCTION ............................................................................................................. 7

ARGUMENT ................................................................................................................... 7

    I.     The Court should grant intervention as of right. ....................................... 7

          A.     Proposed Intervenors' motion is timely. ....................................... 8

          B.     Proposed Intervenors have protectable interests in the health and safety benefits of SB 1137 that may be impaired by this case. .................. 10

               1.     Proposed Intervenors are among SB 1137's intended beneficiaries. ..................................................................... 10

               2.     Proposed Intervenors supported passage of SB 1137 and have engaged in long-standing advocacy around oil and gas development. ................................................................. 13

          C.     Existing parties will not adequately represent Proposed Intervenors' interests. ................................................................................. 14

    II.    Alternatively, the Court should grant permissive intervention. ............................. 17

    III.    The Court Should Consider Declarations and Exhibits Submitted in Support of Intervention in Connection with Proposed Intervenors' Opposition Brief. ........... 19

CONCLUSION ............................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska v. Kerry*,
972 F. Supp. 2d 1111 (D. Alaska 2013)................................................................. 12, 17

*Allied Concrete & Supply Co. v. Baker*,
904 F.3d 1053 (9th Cir. 2018)...................................................................... 16

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987).................................................................................. 16

*Ams. for Prosperity Found. v. Harris*,
809 F.3d 536 (9th Cir. 2015)......................................................................... 20

*Berger v. N.C. State Conf. of NAACP*,
597 U.S. 179 (2022)................................................................................. 16

*Cal. Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987)................................................................................. 15

*Cal. Dump Truck Owners Ass'n v. Nichols*,
275 F.R.D. 303 (E.D. Cal. 2011) ................................................................... 15

*Cal. Dump Truck Owners v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998)................................................................... 12, 16

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006)........................................................................ 7, 10

*California v. BLM*,
286 F. Supp. 3d 1054 (N.D. Cal. 2018) ............................................................ 16

*California v. Tahoe Reg'l Planning Agency*,
792 F.2d 775 (9th Cir. 1986)........................................................................ 17

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022)....................................................................... 16

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011)............................................................. 10, 12, 14, 16

*Cnty. of Fresno v. Andrus*,
622 F.2d 436 (9th Cir. 1980)........................................................................ 10

*Flying Food Group, LLC v. City of Los Angeles*,
No. 2:23-cv-09146-SB-MRW, 2024 WL 1601797 (C.D. Cal. Jan. 29, 2024) ....................... 16

*Herb Reed Enters., LLC v. Fla. Entm't. Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013) ............................................................................... 20

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ................................................................................. 20

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ................................................................................. 10

*Nat'l Parks & Conservation Ass'n v. Babbitt*,
  241 F.3d 722 (9th Cir. 2001) ................................................................................. 16

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
  355 F. Supp. 2d 1060 (N.D. Cal. 2005) ........................................................... 19, 20

*Sable Offshore Corp. v. Santa Barbara*,
  No. 25-4165-DMG, 2025 WL 2412147 (C.D. Cal. July 25, 2025) ........................ 13

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) ............................................................................ 14, 18

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ............................................................................ 11, 12

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972) ............................................................................................... 16

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ................................................................................. 13

*United States v. Arizona*,
  No. CV 10-1413-PHX-SRB, 2010 WL 11470735 (D. Ariz. Dec. 7, 2010) ............ 13

*United States v. California*,
  444 F. Supp. 3d 1181 (E.D. Cal. 2020) .............................................................. 11, 17

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ................................................................................. 19

*Vivid Ent., LLC v. Fielding*,
  774 F.3d 566 (9th Cir. 2014) ................................................................................. 12

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ................................................................................. 8

**Statutes**

30 U.S.C. § 226(a)(1) ................................................................................................. 13

2025 Budget Reconciliation Act, Pub. L. No. 119-21, § 50101(d)(1), 139 Stat. 72
  (2025) .................................................................................................................... 13

**Other Authorities**

SB 1137, 2021-2022 Cal. Leg., Reg. Sess. (2022)
    § 1(a) ................................................................................................................. 10
    § 1(c) ................................................................................................................. 10
    § 1(e) ................................................................................................................. 11
    § 2(b) ................................................................................................................. 10

Fed. R. Civ. P. 24
    (a) ............................................................................... 7, 11, 12, 13, 14, 20
    (a)(2) .................................................................................................................. 11
    (b) ............................................................................................................... 7, 20
    (b)(1)(B) ............................................................................................................ 17
    (b)(3) ........................................................................................................... 17, 18

Local Rules of Practice for the United States District Court, Eastern District of California
    230(b) ................................................................................................................. 8
    230(g) ................................................................................................................. 9

Executive Order 14156, "Declaring a National Energy Emergency" (Jan. 20, 2025).................. 13

Authorization to File an Amicus Brief, 16AA Fed. Prac. & Proc. Juris. § 3975 (5th ed.) ..... 19, 20

## INTRODUCTION

The Court should grant Proposed Defendant-Intervenors Center for Biological Diversity, Food and Water Watch, Friends of the Earth, Los Padres ForestWatch, and Sierra Club (collectively, Proposed Intervenors) leave to intervene as of right or, in the alternative, to permissively intervene in this case. Proposed Intervenors timely filed their motion within six weeks of the filing of the complaint, at the earliest feasible date they could, and have caused no delay or prejudice. Proposed Intervenors' motion is supported by uncontested declarations which establish that their respective nonprofit organizations supported enactment of Senate Bill 1137 (SB 1137), and they represent members and staff who live, work, and recreate within verified health protection zones established by the law—including zones that limit oil and gas leasing on federal land and leases. Plaintiff United States, on behalf of the Department of the Interior's Bureau of Land Management (BLM), seeks to invalidate application of SB 1137 to federal land and leases, which would strip away health protections presently enjoyed by Proposed Intervenors' members and likely expose them to increased air pollution and other harms related to increased oil and gas activity. While Proposed Intervenors seek to defend SB 1137 alongside Defendants State of California et al. (the State), the State possesses different and broader interests and will not undoubtedly make all Proposed Intervenors' arguments, as is already reflected in briefing opposed to BLM's motion for a preliminary injunction.

For these reasons, Proposed Intervenors meet all the requirements for intervention as of right under Rule 24(a). In the alternative, these same factors and a balance of equities support permissive intervention under Rule 24(b). The Court should grant Proposed Intervenors' motion.[1]

## ARGUMENT

### I. The Court should grant intervention as of right.

Courts in the Ninth Circuit construe the requirements of Rule 24(a) "liberally in favor of potential intervenors," *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006), and Proposed Intervenors readily meet these requirements. Proposed Intervenors are

---

[1] As fully explained *infra*, regardless of whether the Court grants this motion, it should fully consider Proposed Intervenors' brief in opposition to BLM's preliminary injunction motion and all of Proposed Intervenors' supporting declarations and exhibits.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                    7

entitled to intervene as of right because: (1) they timely filed this motion; (2) they possess protectable interests, including sparing their members from the harmful consequences of oil and gas drilling close to homes, schools, workplaces, and other sensitive locations; (3) these interests may be impaired by the outcome of this case; and (4) their interests are not adequately represented by existing parties to this action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011); *see also generally* Dkt. No. 10-1, Mem. in Supp. of Mot. for Leave to Intervene (Memo).

### A. Proposed Intervenors' motion is timely.

Proposed Intervenors moved quickly to file their intervention motion less than six weeks after BLM's complaint was filed and made sure to meet the existing parties' stipulated deadline for briefing on BLM's preliminary injunction motion, yet BLM seeks to characterize Proposed Intervenors' moving papers as "belated" and "invit[ing] delay." Dkt. No. 18, Opp'n to Mot. to Intervene (BLM Opp'n) 13:1-10. BLM argues Proposed Intervenors should have moved for leave to intervene earlier so that the Court could "resolve intervention before the preliminary injunction hearing" (*id.* 13:11-13), but this is unreasonable and BLM's claims of prejudice are not credible.

BLM filed its complaint on January 14, 2026, and then moved for a preliminary injunction just two days later, on January 16, noticing a hearing for February 20. Dkt. Nos. 1, 4. BLM and the State subsequently agreed the schedule was too ambitious and, on January 23, filed a stipulation asking to extend the default briefing deadlines and reset the hearing for March 20, which the Court granted. Dkt. Nos. 7, 8. Owing to the Local Rules of Practice and the Court's Standing Order in Civil Cases, the only way that Proposed Intervenors possibly could have had their motion heard before March 20 is if they had moved to intervene almost immediately, within sixteen days of BLM's initial complaint. *See* L.R. 230(b) (motions may be heard "not less than thirty-five (35) days after service and filing of the motion"); Dkt. No. 3-1 (motions are heard on the first and third Friday of each month). Had Proposed Intervenors filed their moving papers on or before February 13, it would have been possible for them to notice their motion for the same day as the preliminary injunction hearing on March 20. But even if Proposed Intervenors had moved faster and filed within just days of BLM's complaint, there is no guarantee their motion

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                    8

would have been heard by the Court on or before March 20, let alone resolved, as BLM suggests. *See* L.R. 230(g); Dkt. No. 15.

In any event, Proposed Intervenors filed as early as was reasonably feasible. Nonprofit organizations require sufficient time to make decisions to litigate; a motion for leave to intervene must be thoroughly supported with detailed and accurate declarations from organizational staff and members; and the process of identifying and contacting members and working with them to develop their declarations typically takes longer than it does to develop declarations for a government or corporate employee whose statement is part of their job.

BLM's unrealistic scheduling demands aside, it has failed to show that Proposed Intervenors' timeline has prejudiced it. BLM does not oppose Proposed Intervenors' participation as amicus curiae (BLM Opp'n 14:21-22), and so it would have received Proposed Intervenors' opposition brief—and been responsible for addressing it—on the same schedule regardless of when Proposed Intervenors moved for leave to intervene. BLM's claims of delay and disruption are also unpersuasive because Proposed Intervenors' status has no bearing on the preliminary injunction hearing, and Proposed Intervenors have afforded the Court ample time to rule on the intervention motion in advance of the April 28, 2026 deadline for the parties to submit a joint status report (*see* Dkt. No. 3 at 2:5), which will inform the Court's next scheduling order.

BLM also complains that counsel for Proposed Intervenors contacted counsel for BLM two days in advance of Proposed Intervenors' filings, suggesting that two days' notice was insufficient. BLM Opp'n 13:2-4. BLM's argument is ironic, given that it filed its preliminary injunction motion within two days of filing its lawsuit, and BLM's counsel did not meet and confer with counsel for the State until the very same day BLM filed its motion. Dkt. No. 4 at 3:1-3. Putting aside that BLM seeks to hold Proposed Intervenors to a higher standard than it has observed itself, BLM has not been prejudiced. The timing of Proposed Intervenors' outreach and meet and confer did not affect the existing, stipulated briefing schedule for the preliminary injunction motion, which Proposed Intervenors followed. And while BLM protests that it was forced to simultaneously oppose intervention and draft a reply in support of its preliminary injunction motion (BLM Opp'n 13:5-7), counsel frequently must navigate multiple deadlines, the

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                        9

U.S. Department of Justice undoubtedly has the resources to do so, and BLM pointedly fails to mention that counsel for Proposed Intervenors expressed a willingness to discuss an alternate schedule for their intervention motion if BLM needed more time.

Where, as here, a motion for leave to intervene is made "at an early stage of the proceedings," the motion should be deemed timely because it will neither prejudice other parties nor delay the proceeding. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding motion timely when filed four months after complaint and two months after answer but "before any hearings or rulings on substantive matters").

**B.   Proposed Intervenors have protectable interests in the health and safety benefits of SB 1137 that may be impaired by this case.**

Proposed Intervenors have established that they have protectable interests in the subject of this litigation based on their status as intended beneficiaries of SB 1137 and their advocacy in favor of SB 1137's enactment.

**1.     Proposed Intervenors are among SB 1137's intended beneficiaries.**

The Ninth Circuit has held that, as is the case with Proposed Intervenors here, the intended beneficiaries of a law have a protectable interest that may be impaired by a lawsuit challenging that law which justifies intervention. *See Lockyer*, 450 F.3d at 441-45; *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980) (public interest groups have a protectable interest that may be impaired where "[t]he individual members . . . are precisely those Congress intended to protect . . . and precisely those who will be injured" if the challenged law were invalidated).

BLM argues that Proposed Intervenors merely possess a "generalized policy interest" in SB 1137 (BLM Opp'n 3:27, 4:13-22) but, in fact, Proposed Intervenors represent members, staff, and communities who are direct beneficiaries of the law. SB 1137 established a statewide 3,200-foot buffer between oil and gas sites and sensitive receptors based on a "growing body of research show[ing] direct health impacts from proximity to oil extraction," "especially due to increased air pollution." *See* SB 1137, 2021-2022 Cal. Leg., Reg. Sess. (2022) §§ 1(a), (c), 2(b). The law places particular emphasis on "frontline communities that have been most polluted by the fossil

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                    10

fuel industry." *Id.* § 1(e). Proposed Intervenors have members and staff who live, work, or recreate in verified health protection zones within 3,200 feet of lands occupied by, or open to, federal oil and gas leases. Memo 18:24-19:5 (citing Gunderman & Walker Decls. ¶¶ 9, 13; Harris Decl. ¶ 8; Rebecchi Decl. ¶¶ 15, 17; Templeton Decl. ¶ 3; Kretzmann Decl. ¶ 4). They likewise have a long history of representation and advocacy on behalf of frontline communities, including advocacy in favor of SB 1137's enactment and implementation. Memo 19:11-22 (citing Facio Decl. ¶¶ 9-10, 12; Templeton Decl. ¶¶ 10-13, 15; Schlosberg Decl. ¶¶ 16-17; Kretzmann Decl. ¶¶ 24-25, 31; Kuyper Decl. ¶¶ 24, 29).

BLM does not address or dispute Proposed Intervenors' supporting declarations and does not directly dispute that Proposed Intervenors are among the intended beneficiaries of SB 1137 with immediate interests in how the law is applied to oil and gas drilling on federal land and leases located near their homes or places they visit. Instead, BLM argues that this case does not threaten to "directly affect" their demonstrated interests. BLM Opp'n 3:25-28. BLM is mistaken.

*First*, BLM is wrong to assert that intervention is not appropriate because the case purportedly involves "the allocation of authority between sovereigns" and presents "purely legal" causes of action such as preemption. BLM Opp'n 1:12-14, 4:8-12, 5:21-22. In relevant part, Rule 24(a) grants a right to intervene based on an interest in "the property or transaction that is the subject of the action," as opposed to an interest in a specific cause of action, and does so as long as the disposition of the litigation "may as a practical matter impair or impede" that interest. Fed. R. Civ. P. 24(a)(2). Thus, Rule 24(a) emphasizes "practical considerations," not legal formalities or "technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *see generally* Fed. R. Civ. P. 24(a)(2). Here, if this Court decides in BLM's favor and SB 1137 is invalidated as applied to federal land and leases near Proposed Intervenors' members, oil and gas drilling "may as a practical matter" occur in areas where it is otherwise currently prohibited, which "may as a practical matter" expose Proposed Intervenors' members to increased air pollution and other environmental harms. Fed. R. Civ. P. 24(a). Accordingly, intervention is warranted, notwithstanding the fact that the case involves a dispute between sovereigns and a preemption cause of action. *See, e.g.*, *United States v. California*, 444 F. Supp. 3d 1181, 1190 n.9

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                    11

(E.D. Cal. 2020) (noting environmental groups' intervention in a dispute between sovereigns); *Alaska v. Kerry*, 972 F. Supp. 2d 1111, 1119 (D. Alaska 2013) (same); *see also Cal. Dump Truck Owners v. Mendonca*, 152 F.3d 1184, 1189-90 (9th Cir. 1998) (granting intervention as of right in a preemption case).

*Second*, BLM conflates the requirements of Rule 24(a) intervention and Article III standing in arguing that Proposed Intervenors' interests "must be direct and non-contingent, not remote or dependent on a chain of future discretionary decisions." BLM Opp'n 4:2-3. The case BLM relies upon for this argument, *Berg*, 268 F.3d at 818, contains no such language. Indeed, *Berg* readily supports granting Proposed Intervenors leave to intervene because it stresses the lenient and practicality-based standard for intervention. *Id.* at 818, 820. Under Rule 24(a) and Ninth Circuit precedent, Petitioners do not need to establish a "concrete and particularized legal interest" that *will* be impaired (BLM Opp'n 3:25-28), but simply a "protectable interest" that *may* be impaired. *See, e.g.*, *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014) (stating that it is not necessary for Proposed Intervenors to establish Article III standing); *Citizens for Balanced Use*, 647 F.3d at 898 (reversing denial of intervention to advocacy group with conservation and wilderness interests that "may, as a practical matter, be impaired" from enjoining enforcement of a limitation on vehicle use on certain public land).

*Third*, BLM incorrectly asserts that the outcome of this litigation will not directly and imminently affect Proposed Intervenors' members, alleging that future federal decision making and project-specific review are required for any new drilling on federal land or leases to occur. BLM Opp'n 5:21-6:11. But BLM's own complaint and preliminary injunction briefing contradict its argument. In its other filings, BLM claims that an injunction is urgently needed because SB 1137 "directly interferes" with "the promotion of domestic energy production" and is currently "obstructing fossil fuel development." Dkt. No. 4-1, Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. (BLM PI Memo) 21:1-4; *see also* Dkt. No. 1, Compl. ¶¶ 2, 48-54. Likewise, BLM has submitted declarations that insist some operators already possess all required federal approvals to proceed with drilling and that SB 1137's bar on state permitting in verified health protection zones is the only regulatory obstacle delaying their commencement of operations. Dkt. No. 4-4, Budy Decl.

¶¶ 5, 10; Dkt. No. 4-6, Eller Decl. ¶¶ 2, 4; Dkt. No. 4-7, Combs Decl. ¶¶ 8, 10. Recent law and policy statements also reflect the federal government's intent to commence new drilling on federal land as expeditiously as possible. *See, e.g.*, BLM PI Memo 23:8-24:2 (discussing Executive Order 14156, "Declaring a National Energy Emergency" (Jan. 20, 2025)); 2025 Budget Reconciliation Act, Pub. L. No. 119-21, § 50101(d)(1), 139 Stat. 72, 138 (2025) (amending 30 U.S.C. § 226(a)(1) to state that certain lands designated under an approved resource management plan "*shall* be made available for leasing" (emphasis added)). Consequently, the threat that this case poses to Proposed Intervenors' interests is actual and imminent.

### 2. Proposed Intervenors supported passage of SB 1137 and have engaged in long-standing advocacy around oil and gas development.

BLM likewise is incorrect in claiming that Proposed Intervenors' efforts to secure SB 1137's health protection zones do not constitute protectable interests under Rule 24(a). BLM Opp'n 4:23-5:20, 5:24-28. Proposed Intervenors' declarations underscore the pivotal role they played in securing passage of the law. Memo 20:7-21:17 (citing Facio Decl. ¶ 12; Kretzmann Decl. ¶¶ 24-25; Schlosberg Decl. ¶¶ 16-17; Templeton Decl. ¶¶ 10-13; Greif Decl. Ex. I at 6-8).

Instead of contesting these declarations, BLM relies primarily on out-of-circuit case law for the proposition that legislative advocacy does not confer a right to intervene. *See* BLM Opp'n 4:23-5:7, 5:24-28. BLM also cites a Ninth Circuit case that did not address this issue (*id*. 4:16-19 (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004))), along with an unreported district court case that found working to support passage of a law, without more, is insufficient to establish a protectable interest. *Id*. 4:19-22 (citing *United States v. Arizona*, No. CV 10-1413-PHX-SRB, 2010 WL 11470735, at *2 (D. Ariz. Dec. 7, 2010)). Here, however, Proposed Intervenors not only worked to pass SB 1137, but their members are among the law's specific, intended beneficiaries. And courts in the Ninth Circuit otherwise continue to follow "Ninth Circuit [precedent that] generally allows public interest groups to intervene where they were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose." *Sable Offshore Corp. v. Santa Barbara*, No. 25-4165-DMG, 2025 WL 2412147, at *4 (C.D. Cal. July 25, 2025) (citation modified).

**C. Existing parties will not adequately represent Proposed Intervenors' interests.**

In claiming that the State will adequately represent Proposed Intervenors' interests, BLM and the State conflate the ability of the Attorney General's Office to diligently defend the State's own sovereign interests with its ability to advocate for Proposed Intervenors' narrower, more personal, and mission-driven interests.[2] However, "[t]he most important factor in assessing the adequacy of representation is how the [proposed intervenor's] interest compares with the interests of existing parties." *Citizens for Balanced Use*, 647 F.3d at 898 (citation modified). In assessing this element, courts look to whether existing parties will "*undoubtedly* make all of a proposed intervenor's arguments." *Id.* at 898 (emphasis added). Here, the answer is no.

*First*, BLM and the State appear to confuse adequacy of representation with diligence of counsel. For example, BLM suggests that the State "ha[s] not indicated any intent to limit [its] defense of SB 1137" and that there is no suggestion that the State will "abandon or concede a meritorious position." BLM Opp'n 9:11-16, 9:20-25; *see also* Dkt. No. 17, Defs.' Resp. to Mot. to Intervene (State Resp.) 2:18-20, 2:24-27, 3:1-9. Proposed Intervenors do not dispute that the Attorney General's office will diligently pursue the interests of its state-government clients. Proposed Intervenors also do not dispute that they seek to intervene as defendants on the side of the State in the instant litigation and, in that sense, are aligned to some extent with the State's purported goal of defending SB 1137. But Rule 24(a) is not focused on the adequacy of counsel, but rather the extent to which Proposed Intervenors' interests diverge from the State's. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 529 (9th Cir. 1983).

*Second*, neither BLM nor the State demonstrate that the State's interests are the same as Proposed Intervenors' interests. Nor can they. The State does not dispute Proposed Intervenors' assertions that it has "broader obligations" than those of Proposed Intervenors, including a "parallel state interest in oil production," and a "history of divergent views" regarding the interpretation of SB 1137's text and its application. *See* State Resp. 2:26-3:3 (quoting Memo 24:19, 25:14, 25:22).

---

[2] Notably, while the State asserts that it adequately represents Proposed Intervenors' interests, the State does not oppose Proposed Intervenors' motion. Dkt. No. 17, State's Resp. to Mot. to Intervene 1:6-9, 4:6-7.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                14

BLM, for its part, does not even respond to Proposed Intervenors' arguments concerning the State's broader, statutory interest in oil and gas production and has therefore waived the opportunity to do so. And BLM's claim that "past disagreements" identified by Proposed Intervenors "have no bearing on this case" (BLM Opp'n 8:27-28) is simply incorrect where those past disagreements pertained to the very law at issue and where they show that the State may have a propensity in this case to favor the same oil industry that BLM champions here. *See, e.g.*, *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011) (finding inadequate representation because agency weakened challenged regulation, pushed compliance deadlines, and showed willingness to "compromise unnecessarily"); *see also* Memo 25:21-26:28 (describing the State's insufficiently protective SB 1137 implementation regulations, delays in statutory compliance timelines, and recent collaboration with oil industry).

*Third*, filings in this case to date demonstrate that the State will not undoubtedly make— and has already failed to make—all of Proposed Intervenors' arguments. While BLM argues that Proposed Intervenors' intervention brief should "have pointed to specific flaws or omissions in the [State's] opposition" to BLM's preliminary injunction motion (BLM Opp'n 8:8-10), this is disingenuous. The State filed its preliminary injunction opposition mere hours before Proposed Intervenors filed their intervention and preliminary injunction briefs, and Proposed Intervenors were not served due to their non-party status. Proposed Intervenors had no advance notice of the State's arguments, let alone sufficient time to review and address the contents of the State's briefing ahead of their same-day opposition deadline.

More to the point, BLM itself acknowledges three separate places where Proposed Intervenors raised different arguments than the State. *See* Dkt. No. 19, Reply in Supp. of Mot. for Prelim. Inj. (BLM PI Reply) 2:25-28 (discussing Proposed Intervenors' interpretation of *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572 (1987)); *id.* 3:26-28 (discussing examples Proposed Intervenors offered to illustrate BLM's treatment of health protection buffers as regulatory in nature); *id.* 6:20-28 (discussing Proposed Intervenors' arguments regarding the "high bar" that the United States must meet to prevail on preemption).

Beyond these instances, the preliminary injunction briefing also illustrates differing

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                 15

interests and priorities. The State highlighted broad interests relating to its sovereignty (Dkt. No. 9, Defs.' Opp'n to BLM's Mot. for Prelim. Inj. 1:12-22, 13:11-16, 19:16-19) and the health of the public at large (*id.* 8:10-12:13, 20:13-21:27), including asserting that "an injunction would leave Californians vulnerable to the health impacts that the Legislature sought to avoid." *Id.* 20:13-15. In comparison, Proposed Intervenors demonstrated these harms to a much greater extent, including through submission of an expert declaration. Dkt. No. 12, Proposed Intervenors' [Proposed] Opp'n to BLM's Mot. for Prelim. Inj. 31:13-32:1; Dkt. No. 12-1 Cushing Decl. Proposed Intervenors likewise offer legal arguments not raised in the State's brief concerning courts' duty to favor environmental protection when weighing potential harm, particularly in cases involving oil and gas activities. *See id.* 32:2-22 (citing *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 545 (1987); *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001); *California v. BLM*, 286 F. Supp. 3d 1054 (N.D. Cal. 2018) and other cases).

*Fourth*, BLM erroneously argues that the Court should presume that the State adequately represents Proposed Intervenors' interests and falsely claims Proposed Intervenors have not rebutted this argument. BLM Opp'n 7:4-13, 7, n.3:20-28. As Proposed Intervenors explained previously, the Ninth Circuit has recently called into question the presumptions BLM invokes. Memo 22:24-23:10 (citing *Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179, 195-97 (2022) and *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022)); *see also Flying Food Group, LLC v. City of Los Angeles*, No. 2:23-cv-09146-SB-MRW, 2024 WL 1601797, at *1-2 (C.D. Cal. Jan. 29, 2024) (identifying "tension" in Ninth Circuit cases around presumptions and noting "line[] of authority" under which movants need only "show[] that their interests are potentially narrower than that of" the government party) (citing *Mendonca*, 152 F.3d at 1189-90 and *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018)). Thus, despite BLM's attempts to hand-wave away *Berger*, *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), and on-point Ninth Circuit case law (BLM Opp'n 7, n.3:20-28), these cases remain good law and undermine the presumptions on which it relies.

In any event, for the reasons described above, Proposed Intervenors have made a "compelling showing" to rebut any presumption of adequate representation. *Citizens for Balanced*

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE          16

*Use*, 647 F.3d at 898 (citation modified); Memo 23:19-28:27. Moreover, as discussed above with respect to Proposed Intervenors' protectable interests, there is no rule that "purely legal" disputes "between sovereigns" preclude intervention (BLM Opp'n 9:18-20), and courts have previously granted intervention in similar intergovernmental disputes. *California*, 444 F. Supp. 3d at 1190 n.9; *Kerry*, 972 F. Supp. 2d at 1119.

*Finally*, BLM acknowledges that an intervenor may establish inadequacy of representation based on its ability to "offer any necessary elements to the proceedings that other parties would neglect." BLM Opp'n 6:22-23 (quoting *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). Although BLM broadly disputes the value of Proposed Intervenors' additional legal and factual perspective (*see, e.g.*, BLM Opp'n 14:12-16), it does not directly acknowledge Proposed Intervenors' arguments under this factor. Proposed Intervenors provide critical context on SB 1137 as a reasonable environmental regulation and offer concrete, lived experiences beyond the knowledge of BLM and the State, helping inform the Court's understanding of relevant legal and equitable issues in this case. *See* Memo 27:24-28:25.

For all the foregoing reasons, the Court should grant Proposed Intervenors' motion to intervene in this action as a matter of right.

## II.    Alternatively, the Court should grant permissive intervention.

Proposed Intervenors also meet the criteria for permissive intervention under Rule 24(b) because their motion is timely, they have a claim or defense that shares a common question of law or fact with the main action, and intervention will not unduly delay or prejudice the existing parties. Fed. R. Civ. P. 24(b)(1)(B), (b)(3); Memo 29:1-30:2.

BLM concedes that Proposed Intervenors' "defense of SB 1137 presents common questions of law with the State's defense" (BLM Opp'n 10:15-17) but disputes the timeliness of Proposed Intervenors' motion and argues that their presence in the case may cause delay and prejudice. *Id*. 11:20-14:16. BLM's arguments against permissive intervention are unfounded.

*First*, as discussed above, Proposed Intervenors' motion for leave to intervene is timely because they moved expeditiously to file it within a matter of weeks, during the earliest stage of this case, before any hearings or substantive decisions. *See supra* at 5:13-6:12.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                    17

*Second*, BLM's argument that Proposed Intervenors have already "invited" delay and prejudice owing to BLM's pending preliminary injunction motion (BLM Opp'n 13:1-14:8) lacks merit. Proposed Intervenors' intervention motion has not affected the briefing schedule or hearing date for BLM's motion. *See supra* at 6:13-7:7. Moreover, the Court offered BLM the opportunity to address Proposed Intervenors' opposition brief in a separate reply. Dkt. No. 15.

*Third*, BLM has not demonstrated that Proposed Intervenors' participation would cause any delay or inefficiency going forward. Proposed Intervenors are willing to coordinate with the State to avoid duplicate briefing and will abide by the Court's scheduling (Memo 29:13-15); these commitments will minimize any burden on BLM and preserve judicial economy. Moreover, the pertinent question for purposes of permissive intervention is not whether intervention may cause *some* delay or prejudice in the proceedings, which Proposed Intervenors submit will, if anything, be minimal, but rather whether it "will *unduly* delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3) (emphasis added). A minor delay or burden, such as additional time spent on briefing or argument, cannot be enough to defeat permissive intervention, because if that were the rule, permissive intervention could never be granted.

*Fourth*, BLM is mistaken in its speculation that granting leave to Proposed Intervenors might "open[] the floodgates to scores of additional intervenors" (BLM Opp'n 1:17) and complicate the case by adding parties. *See id.* 1:14-17, 3:1-3, 12:12-19. BLM overlooks the specific, unique, and compelling nature of Proposed Intervenors' demonstrated interests, discussed above and in Proposed Intervenors' opening brief. BLM also ignores that any other potential intervenor(s) would need to independently demonstrate that they satisfy Rule 24's intervention criteria through a noticed motion to be evaluated under its own facts. *See Sagebrush Rebellion*, 713 F.2d at 526 (stating the court "need not address" "any issue of multiple applications for intervention by applicants with differing interests").

*Finally*, BLM is unable to credibly dispute that equity, access to justice, and fairness concerns weigh in favor of allowing Proposed Intervenors to participate in this litigation. *See* Memo 29:16-27. While BLM disputes that "environmental justice" is at stake in this case and avers that Proposed Intervenors "offer nothing but distraction or duplication" (BLM Opp'n 11:27-

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE          18

12:10), BLM itself has argued that the purpose and effect of SB 1137 is pertinent to the merits of its preemption claim (BLM PI Memo 17:3-5, 18:16-19:5), and this Court will weigh equitable considerations and the public interest in deciding whether to grant a preliminary injunction. Further, Proposed Intervenors have already demonstrated the value they bring to this litigation, complementing the State's preliminary injunction opposition brief with additional relevant arguments and elaborations. *See supra* at 12:12-13:12.

While BLM and even the State might prefer fewer parties in the case, the Ninth Circuit has explained that "the idea of 'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome." *United States v. City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002). Proposed Intervenors represent the interests of residents directly affected by the outcome of this litigation, and the value of their participation outweighs BLM's arguments regarding delay and prejudice. Thus, should the Court find Proposed Intervenors are not entitled to intervene as of right, it should grant Proposed Intervenors' request for permissive intervention.

## III. The Court Should Consider Declarations and Exhibits Submitted in Support of Intervention in Connection with Proposed Intervenors' Opposition Brief.

BLM does not object to Proposed Intervenors' participation as amici curiae (BLM Opp'n 14:21-22; *see also* State Resp. 3:26-4:4), and the Court has already issued an order accepting Proposed Intervenors' brief in opposition to BLM's motion for a preliminary injunction. Dkt. No. 15. Nonetheless, BLM argues that the Court "should disregard the declarations attached" to the opposition brief "and all references" therein, mistakenly suggesting that an amicus is limited to providing a "legal perspective" and may not provide "extra-record evidence." BLM Opp'n 15:10-18 (citing *NGV Gaming, Ltd. v. Upstream Point Molate, LLC,* 355 F. Supp. 2d 1060 (N.D. Cal. 2005)). BLM's assertions are baseless.

*First*, BLM is simply mistaken about the role of amicus curiae, which is not limited to offering legal analysis but includes "[h]ighlighting factual, historical, or legal nuance glossed over by the parties," "[e]xplaining the broader regulatory or commercial context in which a question comes to the court," "[p]roviding practical perspectives on the consequences of potential

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE          19

outcomes," and "[c]onveying instruction on highly technical, scientific, or specialized subjects beyond the ken of most generalist federal judges." Authorization to File an Amicus Brief, 16AA Fed. Prac. & Proc. Juris. § 3975 (5th ed.); *see also NGV Gaming,* 355 F. Supp. 2d at 1068 (noting an amicus may "provide[] . . . legal perspective or information to the court").

*Second*, BLM's argument that Proposed Intervenors have improperly introduced extra-record evidence is a non sequitur, given that there is no record in this case. This case pertains to a legislative enactment, thus there is no administrative record. Also, the case is in its earliest stages before a trial court, meaning there is no record of proceedings that might limit the scope of evidence that could be considered on appeal. And even where a court's decision on the merits might be limited to a record, introducing extra-record evidence is still appropriate and permissible to address equitable issues and remedies, including whether to grant a preliminary injunction. *See, e.g.*, *Ams. for Prosperity Found. v. Harris*, 809 F.3d 536, 540 n.3 (9th Cir. 2015) ("Due to the urgency . . . at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings.") (quoting *Herb Reed Enters., LLC v. Fla. Entm't. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013)); *Hernandez v. Sessions*, 872 F.3d 976, 995-96 (9th Cir. 2017) (crediting amici curiae briefs that "highlight in more concrete terms the irreparable harms" relevant to preliminary injunction decision).

Consequently, the Court can and should consider the entirety of Proposed Intervenors' brief opposing BLM's preliminary injunction motion along with Proposed Intervenors' supporting declarations and exhibits.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors have satisfied the requirements for intervention as a matter of right under Rule 24(a) and, alternatively, permissive intervention under Rule 24(b). Proposed Intervenors thus respectfully request that the Court grant this motion.

Respectfully submitted,

Dated: March 16, 2026

/s/ Colin O'Brien

Colin C. O'Brien, State Bar No. 309413
Elizabeth A. Fisher, State Bar No. 311366
Michelle Ghafar, State Bar No. 315842
Gabriel F. Greif, State Bar No. 341537
cobrien@earthjustice.org
efisher@earthjustice.org
mghafar@earthjustice.org
ggreif@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, CA 94104
Telephone: (415) 217-2000

*Attorneys for Proposed Defendant-Intervenors*
*Food & Water Watch, Friends of the Earth,*
*Los Padres ForestWatch, and Sierra Club*

Victoria Bogdan Tejeda, State Bar No. 317132
Cooper Kass, State Bar No. 346472
vbogdantejeda@biologicaldiversity.org
ckass@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375
Oakland, CA 94612
Telephone: (510) 844-7100

Jason C. Rylander, DC Bar No. 474995 (pro hac vice)
jrylander@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, D.C. 20005
Telephone: (202) 849-8401

*Attorneys for Proposed Defendant-Intervenor*
*Center for Biological Diversity*

REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE                    21