ROB BONTA, State Bar No. 202668
Attorney General of California
ANTHONY R. HAKL, State Bar No. 197335
Supervising Deputy Attorney General
CHRISTOPHER J. KISSEL, State Bar No. 333937
JERRY T. YEN, State Bar No. 247988
Deputy Attorneys General
1300 I Street, Suite 125
Sacramento, CA 95814
Telephone: (916) 210-7836
Fax: (916) 324-8835
E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Defendants State of California, Governor Gavin Newsom, California Department of Conservation, Geologic Energy Management Division, and Doug Ito*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**STATE OF CALIFORNIA; GAVIN NEWSOM, in his official capacity as Governor of the State of California; CALIFORNIA DEPARTMENT OF CONSERVATION, GEOLOGIC ENERGY MANAGEMENT DIVISION; and DOUG ITO, in his official capacity as State Oil and Gas Supervisor,**<br><br>Defendants. | Case No. 2:26-cv-00107-DC-SCR<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: November 20, 2026<br>Time: 1:30 p.m.<br>Courtroom: 10<br>Judge: Hon. Dena M. Coggins<br>Action Filed: January 14, 2026 |

# TABLE OF CONTENTS

**Page**


Introduction ........ 1
Factual and Procedural Background ........ 1
I. SB 1137 Addresses Health Harms Caused By Proximity to Oil Extraction ........ 1
II. California's Oil And Gas Permitting Process ........ 2
III. Procedural History ........ 3
Legal Standard ........ 3
Argument ........ 4
I. No Extraordinary Circumstances Warrant The Instant Motion ........ 4
II. Plaintiff Has Not Demonstrated A Likelihood Of Success On The Merits ........ 5
A. SB 1137 Is Not Field Preempted by FLPMA and the MLA ........ 6
1. The FLPMA and the MLA Do Not Indicate that Congress Intended to Exclusively Occupy the Field of Land-Use or Oil and Gas Development on Federal Land ........ 7
2. SB 1137 Is A Public-Health And Environmental Regulation ........ 9
B. SB 1137 Does Not Conflict With The MLA or FLPMA ........ 11
1. SB 1137 Does Not Present an Obstacle to the FLPMA or MLA ........ 11
2. Compliance with Federal Law and SB 1137 is Possible ........ 14
III. Plaintiff Has Not Established Irreparable Harm ........ 15
IV. The Balance Of The Equities And Public Interest Weigh Strongly Against Preliminary Injunctive Relief ........ 18
Conclusion ........ 20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*389 Orange St. Partners v. Arnold*
179 F.3d 656 (9th Cir. 1999) ........ 3, 5

*Allen v. Mayberg*
No. 1:06-cv-01801-BLW-LMB, 2013 WL 3992016 (E.D. Cal. Aug. 1, 2013) ........ 5

*Arizona v. United States*
567 U.S. 387 (2012) ........ 17, 20

*Beaver v. Tarsadia Hotels*
816 F.3d 1170 (9th Cir. 2016) ........ 8

*Bohmker v. Oregon*
903 F.3d 1029 (9th Cir. 2018) ........ *passim*

*Brubaker v. Board of County Commissioners*
652 P.2d 1050 (Colo. 1982) ........ 12

*Cal. Coastal Comm'n v. Granite Rock Co.*
480 U.S. 572 (1987) ........ 6, 8, 9, 17

*Cal. Trucking Ass'n v. Bonta*
996 F.3d 644 (9th Cir. 2021) ........ 8

*California v. Azar*
911 F.3d 558 (9th Cir. 2018) ........ 18

*Caribbean Marine Servs. Co. v. Baldrige*
844 F.2d 668 (9th Cir. 1988) ........ 16

*Carroll v. Nakatani*
342 F.3d 934 (9th Cir. 2003) ........ 3

*Chinatown Neighborhood Ass'n v. Harris*
794 F.3d 1136 (9th Cir. 2015) ........ 8

*Christianson v. Colt. Indus. Operating Corp.*
486 U.S. 800 (1988) ........ 3

*Cohen v. Apple Inc.*
46 F.4th 1012 (9th Cir. 2022) ........ 6

*Daimler Truck N. A., LLC v. Cal. Air Res. Bd.*
No. 2:25-cv-02255-DC-AC, 2025 WL 3049944 (E.D. Cal. Oct. 31, 2025) ........ 15

**TABLE OF AUTHORITIES**
**(continued)**

**Pa**

*Developmental Servs. Network v. Douglas*
666 F.3d 540 (9th Cir. 2011) ..... 15

*Doe v. San Diego Unified Sch. Dist.*
19 F.4th 1173 (9th Cir. 2021) ..... 16

*Eggleston v. Orellana*
No. 2:26-cv-01843-FLA, 2026 WL 872693 (C.D. Cal. March 26, 2026) ..... 4

*English v. General Elec. Co.*
496 U.S. 72 (1990) ..... 8

*Gilstrap v. United Air Lines, Inc.*
709 F.3d 995 (9th Cir. 2013) ..... 6

*Jones v. Google LLC*
73 F.4th 636 (9th Cir. 2023) ..... 6

*Kona Enters., Inc. v. Estate of Bishop*
229 F.3d 877 (9th Cir. 2000) ..... 3, 5, 14

*League of Wilderness Defs./Blue Mts. Biodiversity Project v. Connaughton*
752 F.3d 755 (9th Cir. 2014) ..... 17

*Lydo Enters., Inc. v. City of Las Vegas*
745 F.2d 1211 (9th Cir. 1984) ..... 16

*Maryland v. King*
567 U.S. 1301 (2012) ..... 20

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*
915 F.3d 197 (4th Cir. 2019) ..... 17

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*
491 U.S. 350 (1989) ..... 17

*Penn Central Transportation Co. v. City of New York*
438 U.S. 104 (1978) ..... 10

*People v. Rinehart*
1 Cal.5th 652 (2016) ..... 9, 13, 14

*Rocky Mtn. Farmers Union v. Corey*
913 F.3d 940 (9th Cir. 2019) ..... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Pa**

*Shell Offshore Inc. v. Greenpeace, Inc.*
864 F. Supp. 2d 839 (D. Alaska 2012) ... 19

*South Dakota Mining Association v. Lawrence County*
155 F.3d 1005 (8th Cir. 1998) ... 12, 13

*United States v. Arizona*
641 F.3d 339 (9th Cir. 2011) ... 17

*United States v. California*
No. 2:26-CV-00107-DC-SCR, 2026 WL 878702 (E.D. Cal. Mar. 31, 2026) ... *passim*

*Ventura County v. Gulf Oil Corp.*
601 F.2d 1080 (9th Cir. 1979) ... 9, 12, 13

*Vital Pharmaceuticals v. PhD Marketing, Inc.*
No. CV 20-6745-RSWL-JCx, 2021 WL 6881866 (C.D. Cal. March 21, 2021) ... 4

*Winter v. Nat. Res. Def. Council, Inc.*
555 U.S. 7 (2008) ... 4, 18

**STATUTES**

United States Code, Title 30
§ 21a ... 12
§ 187 ... 7
§ 189 ... 7

United States Code, Title 43
§ 1701 (a)(7) ... 7
§ 1701(a)(8) ... 7, 12
§ 1702 (c) ... 7
§ 1712(c)(8) ... 7
§ 1712(c)(9) ... 7

California Code of Regulations, Title 14
§ 1721 ... 13

**TABLE OF AUTHORITIES**
**(continued)**

**Pa**

California Public Resources Code
§ 3011(a) .......... 2
§ 3106 .......... 2
§ 3203(b) .......... 2
§ 3280 .......... 1
§ 3280(c) .......... 2
§ 3281(a) .......... 2
§ 3281(a)(1) .......... 12

California Government Code
§ 65000, *et seq* .......... 10
§ 66410, *et seq* .......... 10

Federal Land Policy Management Act of 1976 .......... *passim*

Mineral Leasing Act of 1920 .......... *passim*

National Forest Management Act .......... 8

**COURT RULES**

Local Rule 230(j) .......... 4

**OTHER AUTHORITIES**

Senate Bill 1137
§ 1 .......... 13
§ 1(a) .......... 2
§ 1(e) .......... 1

# INTRODUCTION

Nothing has changed since the Court denied Plaintiff's motion for preliminary injunction. Plaintiff has styled its motion as a "renewed" motion, but merely asks the Court to reconsider its previous order. In doing so, Plaintiff fails to show the existence of the type of extraordinary circumstances that warrant reconsideration under Ninth Circuit case law and this Court's local rules, such as new evidence, clear error, or manifest injustice. The only thing that Plaintiff argues has changed is the federal government's decision to schedule a lease sale in December. That is not an extraordinary circumstance because it has no impact on the Court's conclusion that Plaintiff is unlikely to succeed on the merits of its preemption claim. Furthermore, Plaintiff already made the argument that leasing would begin at some point. Thus, this motion fails to meet the standard for reconsideration.

In addition, while Plaintiff may have changed the categories of preemption it relies on, its fundamental argument is the same—that SB 1137 is a land-use regulation and conflicts with Congressional intent. The Court has already rejected those arguments and there is no reason to revisit them. The Court should reject this veiled attempt to bring a late motion for reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. SB 1137 Addresses Health Harms Caused By Proximity to Oil Extraction

Because the Court is familiar with the oil and gas permitting process in California and Senate Bill 1137, ECF No. 25, Defendants incorporate by reference the background in their opposition to Plaintiff's first preliminary injunction, ECF No. 9, but highlight certain aspects for ease of reference.

In 2022, the California Legislature passed and Governor Newsom signed Senate Bill 1137, which added Article 4.6 (commencing with Section 3280) to Chapter 1 of Division 3 of the California Public Resources Code. Cal. Stats. 2022, ch. 365 (SB 1137), § 2. The Legislature enacted SB 1137 to protect "frontline communities that have been most polluted by the fossil fuel industry." *Id.*, § 1(e). The Legislature found that a "growing body of research shows direct health impacts from proximity to oil extraction," "proximity to oil and gas extraction sites pose

significant health risks, especially due to increased air pollution," and "studies have shown evidence of harm at distances less than one kilometer, which is approximately 3,200 feet." *Id.*, § 1(a), (c), (d).

Based on these scientific conclusions regarding the health risks associated with proximity to oil and gas development, SB 1137 prohibits the issuance of a notice of intent (NOI) to drill or rework (i.e., deepen, redrill, or permanently alter the well casing, Cal. Pub. Res. Code § 3203(b)) oil or gas wells within a health protection zone, defined as the area within 3,200 feet of a "sensitive receptor." Cal. Pub. Res. Code, § 3281(a).[1] As this Court explained previously, "the 3,200 feet (1km) distance was not an arbitrary line drawn by the Legislature, lacking connection to the asserted environmental protection purpose; rather, that distance was also supported by the scientific studies." *United States v. California*, No. 2:26-CV-00107-DC-SCR, 2026 WL 878702, at *18 (E.D. Cal. Mar. 31, 2026). A "sensitive receptor" includes any residence, education resource (e.g., school), community-resource center, healthcare facility, live-in housing, or building with a business open to the public. § 3280(c). There are certain exceptions to the prohibition, such as when repair is needed to prevent a threat to public health or safety, or permits are needed to plug and abandon a well. § 3281(a).

## II. California's Oil And Gas Permitting Process

The California Department of Conservation, Geologic Energy Management Division (CalGEM) oversees "the drilling, operation, maintenance, and abandonment" of oil and gas wells. § 3106. It is also responsible for "protecting public health and safety and environmental quality." § 3011(a). Thus, oil and gas operators seeking approval for new wells or to rework existing wells must submit to CalGEM an application for an NOI, colloquially referred to as a permit. Decl. of Trey Powell (Powell Decl.)[2] ¶ 5. CalGEM reviews each permit application for adherence to health and safety rules, environmental rules such as the California Environmental Quality Act, and other state laws and guidelines. *Id.* ¶ 6. CalGEM will only approve an NOI application if it

[1] All statutory references are to the California Public Resources Code unless otherwise indicated.

[2] For ease of reference, Defendants have attached declarations originally filed with their opposition to Plaintiff's first preliminary injunction motion.

meets all CalGEM's regulatory requirements and if any potential impacts to health, safety, or the environment identified by CalGEM are effectively addressed by mitigating permit conditions. *Id.*

This permitting process has long worked the same for oil and gas operators with leases to operate on federal lands. *See id.* at ¶¶ 5–6. Just like operators drilling on private lands, federal lessees submit NOIs to CalGEM and may not begin operations until and unless CalGEM approves the NOI. *Id.* This longstanding approach ensures that the same rules and protections generally apply to oil and gas operations on federal lands as on other (private or state) lands.

### III. Procedural History

More than four years after SB 1137 was enacted, Plaintiff filed this action. ECF No. 1. Shortly thereafter, Plaintiff filed a motion for preliminary injunction. ECF No. 4 (First PI Mot.). After briefing and oral argument, the Court denied the motion on March 31, 2026. ECF No. 25. On August 12, 2026, the Court issued a scheduling order with summary judgment motions due on July 7, 2027. ECF No. 33.

On October 16, 2026, more than six months after the Court denied its original preliminary injunction motion, Plaintiff brought this renewed motion for preliminary injunction. ECF No. 34.

## LEGAL STANDARD

While "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, [it] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800 (1988) (internal quotation marks and citation omitted). Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Moreover, a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To prevail, "a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) that an injunction is in the public interest." *Id*. at 7, 20.

## ARGUMENT

### I. NO EXTRAORDINARY CIRCUMSTANCES WARRANT THE INSTANT MOTION

Although Plaintiff styled this as a "renewed" motion, it is actually a motion for reconsideration and should be construed as such. *See Eggleston v. Orellana*, No. 2:26-cv-01843-FLA, 2026 WL 872693, *1 (C.D. Cal. March 26, 2026) ("As Petitioner seeks to amend and reassert a motion the court has already denied, the court will construe the Renewed Motion as a motion for reconsideration"); *Vital Pharmaceuticals v. PhD Marketing, Inc.*, No. CV 20-6745-RSWL-JCx, 2021 WL 6881866, *2 (C.D. Cal. March 21, 2021) ("this Renewed Motion [for preliminary injunction] is properly styled a motion for reconsideration").

Local Rule 230(j) requires that a motion for reconsideration specify what new grounds exist for the motion and why they were not presented in the earlier motion. Here, Plaintiff asks the Court to reconsider previously-raised arguments, such as characterizing SB 1137 as a land-use regulation (Memorandum in Support of Renewed Mot. for Prelim. Injunction (Mot.), ECF No. 34-1 at 12–14) and that SB 1137 stands as "an obstacle" to the accomplishment of Congress's objectives (Mot. at 16–19). *See, e.g.,* ECF No. 4-1 (First PI Mot. Memorandum) at 14–20. However, Plaintiff fails to explain what new grounds exist to justify reconsidering those arguments.

Plaintiff also makes some new arguments as to why SB 1137 is preempted but fails to explain why those arguments were not presented in its original motion. For example, Plaintiff now argues that SB 1137 is field preempted because Congress allegedly occupied the field of federal land use and oil and gas development on federal land. Mot. at 10–16; *see also California*, 2026 WL 878702, at *10 ("Plaintiff advances only a conflict preemption argument, not express or field preemption."). In addition, Plaintiff raises the argument that it is impossible for lessees to

comply with federal law and SB 1137. Mot. at 19–21; *see also California*, 2026 WL 878702 at *15 ("Plaintiff does not advance any arguments regarding . . . 'conflicts that make it impossible for private parties to comply with both state and federal law.'"). Nothing prevented Plaintiff from raising those arguments before; they should therefore be disregarded. *See Kona*, 229 F.3d at 890.

The only new fact that Plaintiff argues could not have been raised earlier is that the leasing of some federal land is, according to Plaintiff, scheduled to begin on December 1, 2026. Mot. at 1. But even this point is not new. Plaintiff previously suggested, in its first preliminary injunction motion, that leasing would begin at some point. *See* ECF No. 4-1 at 8; *see also, e.g.,* ECF No. 4-2 (Karuzas Decl.) ¶ 15 ("BLM could plan additional lease sales"); ECF No. 4-3 (Warren Decl.) ¶ 25 ("BLM anticipates reduced competition in future lease sales"). And the Court, in denying Plaintiff's preliminary-injunction motion, accounted for that possibility. *California*, 2026 WL 878702, at *20. Thus, the fact that leasing is now scheduled to begin hardly qualifies as a "highly unusual circumstance" justifying a motion for reconsideration. *389 Orange St. Partners*, 179 F.3d at 665.

Accordingly, properly construed as a belated motion for reconsideration, Plaintiff's "renewed" motion for preliminary injunction should be denied. *See Allen v. Mayberg*, No. 1:06-cv-01801-BLW-LMB, 2013 WL 3992016, *9 (E.D. Cal. Aug. 1, 2013) (denying motion for reconsideration of the preliminary injunction denial because plaintiff failed to show that extraordinary circumstances existed).

## II. Plaintiff Has Not Demonstrated A Likelihood Of Success On The Merits

The Court should deny Plaintiff's motion even if the Court were to take the motion at face value. The Court has already concluded that SB 1137 is a reasonable environmental regulation and that Plaintiff is unlikely to establish that it conflicts with federal law. *California*, 2026 WL 878702 at *18. There is no reason for the Court to reach a different conclusion despite Plaintiff's attempt to now present its arguments under different preemption categories. Just like in its initial preliminary injunction motion, those arguments rely on "several mischaracterizations of SB 1137." *Id.* at *15. Thus, just as before, Plaintiff is unlikely to succeed on the merits of its preemption claim.

State laws can be preempted in three ways—express preemption, field preemption, or conflict preemption. *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023). Express preemption occurs when Congress "enact[s] a statute containing an express preemption provision." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1003 (9th Cir. 2013). Field preemption occurs "when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1027 (9th Cir. 2022). Conflict preemption occurs when either (1) a "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," or (2) "it is impossible to comply with both state and federal law." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987) (citations omitted).

Having failed earlier to show that SB 1137 obstructs federal policy, Plaintiff makes the same argument under the guise of different preemption categories. In particular, Plaintiff now contends that SB 1137 is field preempted by the Federal Land Policy Management Act of 1976 (FLPMA) and the Mineral Leasing Act of 1920 (MLA). Mot. at 10, 12, 14. It further argues that SB 1137 conflicts with federal law because it stands as an obstacle to the objectives of Congress—recycling the argument from its prior motion—while also arguing that SB 1137 makes it impossible for federal lessees to comply with federal obligations and state law. Mot. at 16. The MLA and FLPMA do not fully occupy the field of environmental protections, and SB 1137's environmental protections are not an obstacle to Congress' objectives, nor do they make it impossible for federal lessees to comply with both federal and state law.

### A. SB 1137 Is Not Field Preempted by FLPMA and the MLA

Plaintiff claims that the FLPMA and the MLA preempt SB 1137 based on two flawed field preemption arguments. First, Plaintiff fails to discuss or point to any statutory language that even suggests that the FLPMA and the MLA exclusively occupy the field of "federal land-use management" or the field of "oil and gas production on federal lands." Mot. at 11, 14. In fact, the argument is contradicted by the plain terms of the MLA and the MLA. Second, Plaintiff argues that SB 1137 is preempted because it is a land-use regulation. Mot. 12–14. This Court has already rejected each of those arguments. *California*, 2026 WL 878702 at *18.

### 1. The FLPMA and the MLA Do Not Indicate that Congress Intended to Exclusively Occupy the Field of Land-Use or Oil and Gas Development on Federal Land

Without citing any part of the FLPMA or the MLA, Plaintiff jumps to the conclusion that there is a "pervasive federal framework for determining the use of federal lands" and that "Congress enacted a comprehensive scheme regarding oil and gas development on federal lands." Mot. at 11, 15. To the contrary, the FLPMA provides that "[l]and use plans of the Secretary under this section *shall be consistent with State and local plans* to the maximum extent he finds consistent with Federal law and the purposes of this Act," including "applicable pollution control laws." 43 U.S.C. § 1712(c)(8), (c)(9) (emphasis added); *see also California*, 2026 WL 878702 at *11. It directs the Secretary to manage federal lands on a "multiple use" basis, "making the most judicious use of the land for some or all of the[] resources," and, when appropriate, "using 'some land for less than all of the resources.'" 43 U.S.C. §§ 1701 (a)(7), 1702 (c)); *see also California*, 2026 WL 878702 at *17. Furthermore, management of the land under FLPMA must also "protect the quality of the scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values." 43 U.S.C. § 1701(a)(8). Congress also specified in a statutory note that "[n]othing in this Act shall be construed as . . . a limitation upon . . . the police power of the respective States . . . or as depriving any State or political subdivision thereof of any right it may have to exercise civil and criminal jurisdiction on the national resource lands." *California*, 2026 WL 878702 at *11 (quoting Pub. L. No. 94–579 (S 507), October 21, 1976, 90 Stat. 2743).)

For its part, the MLA clarified that no federal mining lease "provisions shall be in conflict with the laws of the State in which the leased property is situated." 30 U.S.C. § 187; *see also California*, 2026 WL 878702 at *10. The MLA also provided that it should not "be construed or held to affect the rights of the States or other local authority to exercise any rights which they may have." 30 U.S.C. § 189); *see also California*, 2026 WL 878702 at *10. Nothing in the statutes suggest that Congress intended for the FLPMA and the MLA to fully occupy the field of land-use or oil and gas development on federal land.

Plaintiff suggests that the Court simply adopt the Supreme Court's assumption in *Granite Rock* that the combination of the National Forest Management Act (NEFA) and FLPMA preempts state land-use plans and asks this Court to "extend [that assumption] to all state land-use laws that attempt to regulate federal land use." Mot. at 11, 15. Plaintiff provides no basis for this request and indeed there is none. First, NEFA has not been asserted in this case nor is it relevant to oil and gas development on federal land. Second, both the Supreme Court in *Granite Rock* and the Ninth Circuit expressly declined to decide whether state land-use plans were preempted only because they concluded that the challenged laws were environmental regulations—in other words, those courts simply did not reach the question of whether all state land-use laws were preempted. *Granite Rock*, 480 U.S. at 585, 587–89; *see also Bohmker v. Oregon*, 903 F.3d 1029, 1040 (9th Cir. 2018). That is the situation here, too. This Court does not need to decide whether federal law fully occupies the federal land-use field because SB 1137 is an environmental regulation, as the Court has previously concluded and discussed below.

In addition, "'[w]here . . . the field which Congress is said to have pre-empted' includes areas that have 'been traditionally occupied by the States,' congressional intent to supersede state laws must be 'clear and manifest.'" *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990) (citation omitted). Indeed, there is a "strong presumption against preemption." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1180–81 (9th Cir. 2016). Courts "presum[e] that Congress does not intend to supplant state law, particularly in areas of traditional state regulation." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 654 (9th Cir. 2021) (citation omitted). The presumption against preemption is "especially strong" when "Congress has legislated in a field which the states have traditionally occupied." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1141 (9th Cir. 2015) (citation omitted). In this case, California agencies have been regulating oil and gas wells since 1915. Oil and Gas, CALIFORNIA DEPARTMENT OF CONSERVATION, https://www.conservation.ca.gov/calgem/Pages/Oil-and-Gas.aspx (last visited Nov. 2, 2026); *see also Rocky Mtn. Farmers Union v. Corey*, 913 F.3d 940, 946 (9th Cir. 2019) ("Legislation designed to free [the air] from pollution . . . clearly falls within the exercise of even the most traditional concept of . . . the police power."). Moreover, in its first preliminary injunction

motion, Plaintiff admitted that "Congress has not barred California from regulating federal lands for environmental purposes." ECF No. 4-1 at 15; *see also id*. at 2 (acknowledging that oil and gas operations on federal land have been historically governed by both state and federal law); *see also, e.g.*, *Ventura County v. Gulf Oil Corp.*, 601 F.2d 1080, 1082 (9th Cir. 1979) (approval for oil and gas drilling issued by U.S. Interior and Agriculture Departments and California Resources Agency).

The presumption against preemption also applies when there is a claim that state regulations are preempted due to their application on federal land. "Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory . . . ." *Granite Rock*, 480 U.S. at 580. So, "to displace the application of state law on federal land, Congress must act affirmatively." *People v. Rinehart*, 1 Cal.5th 652, 660 (2016). Plaintiff has not cited any affirmative action or Congressional intent to supersede state environmental laws governing oil and gas development on federal land.

**2. SB 1137 Is A Public-Health And Environmental Regulation**

As it does in the first preliminary injunction motion, Plaintiff characterizes SB 1137 as a land-use regulation without acknowledging SB 1137's express purpose: to protect communities from the adverse health and environmental impacts of oil and gas operations. Plaintiff again makes the argument that the "absence of any substantive environmental benchmark" makes SB 1137's "setback" more "akin" to "zoning and local ordinances." Mot. at 12. The Court already rejected this argument, noting that the Ninth Circuit in *Bohmker* "acknowledged that 'environmental regulations may take many forms,' including a 'prohibition' on the 'use of land in a particular 'zone.'" *California*, 2026 WL 878702 at *17 (quoting *Bohmker*, 903 F.3d at 1041–42). The Court also acknowledged the Legislature's reliance on scientific studies showing evidence of significant health risks within 3,200 feet of oil and gas production sites. *Id*. at *18. In fact, SB 1137 is an environmental regulation for the same basic reasons that the Ninth Circuit in *Bohmker* held that an Oregon law banning the use of certain mining equipment in particular "zones" was not preempted by federal mining laws when applied on federal land. 903 F.3d at 1041–43. First, it does not dictate a specific land use. It only limits the environmental *impacts* of

oil and gas operations to public health by establishing minimum distances for new and reworked wells from "sensitive receptors" such as homes and schools. Second, SB 1137 is not part of California's "extensive and distinct land use system," *Bohmker*, 903 F.3d at 1042, which, like the land-use system in Oregon, exists to coordinate and develop local land-use plans. *See* Cal. Gov. Code, §§ 65000, *et seq.* (Planning and Zoning Law); *id.*, §§ 66410, *et seq.* (Subdivision Map Act). SB 1137 "stands apart from that regime"; it is part of the Oil and Gas Conservation section of California's Public Resources Code. *Bohmker*, 903 F.3d at 1043. And third, even though "SB 1137 does not impose emissions standards, it does limit the environmental and health impacts of emissions from oil and gas development on nearby populations" and has an "obvious and important environmental purpose," like the Oregon law at issue in *Bohmker*. *California*, 2026 WL 878702 at *18.

Contrary to Plaintiff's argument, neither "the State" nor CalGEM has ever taken the position that SB 1137 constitutes an "exercise of the State's land-use authority." Mot. at 13. Plaintiff makes that argument by pointing to CalGEM's discussion and quotation in a motion to dismiss from another case regarding the Supreme Court's *Penn Central* case (*Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978)), which sets out a balancing test to determine whether a government regulation is a regulatory taking under the Fifth Amendment. Mem. of P. & A. Supporting Defs.' Mot. to Dismiss 10, *Morgan v. Ito*, No. 26-cv-00244 (C.D. Cal. Mar. 5, 2026), Dkt. No. 19-1, filed as ECF No. 34-13. However, that motion focused on the allegations made by the plaintiffs in that case regarding the alleged taking of mineral rights, not land-use rights. *Id.* CalGEM specifically did not concede those allegations; none of them were at issue because, for purposes of the motion to dismiss, they were taken by the Court as true. *Id.* at 11. In addition, Plaintiff takes CalGEM's quotation from the *Penn Central* case out of context. CalGEM's discussion was part of a larger discussion regarding general Supreme Court precedent for takings cases. *Id.* at 10–11.

In sum, SB 1137 is not a land-use planning statute, but an environmental regulation that, like the Oregon law in *Bohmker*, restricts a specific activity within a limited number of specific zones to protect the environment. Accordingly, SB 1137's regulation of oil and gas operations

within a health protection zone to protect public health is not preempted by the FLPMA or the MLA.

**B. SB 1137 Does Not Conflict With The MLA Or FLPMA**

SB 1137 does not stand as an obstacle to Congress' objectives nor does it make it impossible for federal lessees to comply with both federal and state law. Plaintiff made similar arguments in its first preliminary injunction motion, where it argued that SB 1137 would conflict with Congress's objective to develop oil and gas resources on federal land. The Court rejected those arguments because FLPMA also expressed Congress' intent to ensure that the lands were managed in a manner that protected "ecological, environmental, air and atmospheric, water resources, and archeological values." *California*, 2026 WL 878702 at *17 (citing 43 U.S.C. § 1701(a)(8)). The Court ultimately concluded that SB 1137 does not "conflict with federal policy under the MLA and FLPMA merely because its regulations may result in less than maximum extraction of oil and gas on federal leased land." *Id*. Plaintiff has presented no reason for the Court to change that conclusion.

**1. SB 1137 Does Not Present an Obstacle to the FLPMA or MLA**

Plaintiff argues that the "obstacles imposed by SB 1137 are significant" because one-third of all federal leases in California fall within health protection zones. Mot. at 17. While Defendants do not concede the accuracy of those calculations, SB 1137 only limits the drilling or reworking of oil and gas wells within health protection zones, on federal lands and private lands alike. It is not a ban on all new oil and gas development on federal land. *California*, 2026 WL 878702 at *15. Lessees may obtain permits for oil and gas wells on any of the federal land outside of health protection zones. *See Bohmker*, 903 F.3d 1042 n.7 (stating that the challenged law prohibiting motorized mining in areas designated as an essential salmon habitat was not a "ban" because only some of the plaintiffs' mining claims were located in those designated areas).

Moreover, federal leases do not grant the right to drill oil and gas wells anywhere on federal land. *See* Warren Decl., ECF No. 4-3, ¶ 12 (a federal lease "merely conveys a conditional right to seek approval for future operations"). Indeed, the MLA and FLPMA grants BLM the authority to lease the rights to develop mineral resources, but not at the expense of the environment or public

health. *See* 30 U.S.C. § 21a; 43 U.S.C. § 1701(a)(8). As noted above, SB 1137 does not prohibit oil and gas operations altogether or mandate a particular use of land. It only imposes a setback for those operations to locations at least 3,200 feet from homes, schools, hospitals, and other sensitive receptors to protect the health of communities. SB 1137 also does not limit using wells outside of health protection zones to reach oil and gas resources within health protection zones—for example, laterally drilled wells allow access to mineral resources hundreds or thousands of feet beneath sensitive receptors, while keeping the wellhead at the surface and outside the health protection zone, therefore also keeping its associated emissions at a safer distance from sensitive receptors. *See* Powell Decl. ¶ 9 (explaining methods to laterally or directionally reach oil and gas resources underneath a health protection zone without having to drill on the surface).

And for existing wells within health protection zones, SB 1137 does not impact current drilling operations (*see California*, 2026 WL 878702 at *15) and includes exceptions for "threat[s] to public health, safety, or the environment" (§ 3281(a)(1)). CalGEM has approved 77 such exceptions, including on federal land. *See* Powell Decl. ¶ 7. In other words, SB 1137 limits only a specific method of oil and gas development: drilling and reworking oil and gas wells within health protection zones. It does not ban oil and gas operations nor does it mandate any particular use of land and thus does not present an obstacle to Congress' objectives set forth in the FLPMA and the MLA.

As it did in its prior motion, Plaintiff relies on the Ninth Circuit's decision *Ventura County*, the Eighth Circuit's decision in *South Dakota Mining Association v. Lawrence County*, 155 F.3d 1005 (8th Cir. 1998), and the Colorado Supreme Court decision in *Brubaker v. Board of County Commissioners*, 652 P.2d 1050 (Colo. 1982). Mot. at 17–19. However, the challenged laws in those cases are different from SB 1137. Those laws involved general zoning regulations and had nothing to do with environmental protections. *See Ventura County*, 601 F.2d at 1082, 1084 (county's zoning laws gave the local planning commission complete discretion over whether to issue an oil exploration and extraction permit); *South Dakota Mining*, 155 F.3d at 1007 (ordinance amending zoning laws); *Brubaker*, 652 P.2d at 1053 (county planning commission denying permits because they were inconsistent with long-range plans and existing permits for

surrounding property). In contrast, SB 1137 regulates only certain oil and gas activities (reworking wells and drilling new wells) and only locations near sensitive receptors, for the sole purpose of addressing the health risks associated with proximity to oil and gas extraction sites. SB 1137, § 1. It does not purport to grant CalGEM or any other entity the authority to make open-ended or discretionary land-use decisions on federal land.

Moreover, the *Ventura County* court acknowledged that the MLA did not preempt certain state laws, such as laws regarding "well spacing of federal mineral lessee operations," even though such laws could be characterized as having a clear land-use dimension. 601 F.2d at 1086 (citing *Texas Oil & Gas Corp. v. Phillips Petroleum Co.* 277 F. Supp. 366, 371 (1967 W.D. Okla.)). Indeed, laws restricting the location and spacing of wells, which the *Ventura County* court would have deemed *not* to be preempted, are similar in kind to SB 1137's location and spacing requirements that wells be located a minimum distance from sensitive receptors for the protection of health, safety, and the environment. *See* Cal. Code Regs., tit. 14, § 1721.

In *South Dakota Mining*, the Eighth Circuit concluded that the challenged ordinance acted as a "per se ban" on *all* mining in that area because "surface metal mining [was] the only practical way . . . to mine the valuable mineral deposits located on federal land," and thus presented an obstacle to the congressional purpose of encouraging mining on federal land. 155 F.3d at 1011. Unlike that ordinance, which affected mostly federal land, SB 1137 applies across all of California; only a small percentage of SB 1137's applications are on federal land (of which, even then, only thirteen percent is affected). *See* Decl. of Lloyd Light (Light Decl.) ¶ 11. Moreover, "[a]gainst its own numbers and percentages, Plaintiff's characterization of SB 1137 as a de facto ban is a considerable stretch." *California*, 2026 WL 878702, at *15. And as explained above, drilling from surface locations within a health protection zone is not the only possible method of extracting oil and gas resources underneath a health protection zone on federal land. Powell Decl. ¶¶ 9–10 (explaining horizontal drilling and the use of that drilling method in California).

SB 1137 is more like the moratorium on dredging permits at issue in *Rinehart*, 1 Cal.5th 652. California passed a moratorium to eliminate dredge mining's adverse environmental impacts on fish species, water quality, and public health. *Id.* at 658. The defendant, who had

been criminally charged with unpermitted use of a suction dredge on federal land, asserted that California's moratorium was preempted by federal mining law because the moratorium interfered with Congress's intent to grant individuals a federal right to mine. *Id.* at 658, 660, 664. The California Supreme Court disagreed. The court stated that, while federal laws granted specific mining rights, those laws did not "guarantee that mining would prove feasible" and did not create a "grant of immunity against local regulation." *Id.* at 666. Accordingly, California's moratorium did not conflict with "congressional purposes and objectives" and was not preempted. *Id.* at 657, 661.

At bottom, SB 1137 is consistent with the purposes of the MLA and FLPMA: to lease mineral rights on federal land while protecting the public from environmental harm. *See California*, 2026 WL 878702 at *17 ("The court does not find SB 1137 to conflict with federal policy under the MLA and FLPMA"); *id.* ("SB 1137 arguably furthers federal objectives rather that [sic] preventing or frustrating them"). There is no obstacle preemption.

**2. Compliance with Federal Law and SB 1137 is Possible**

As noted earlier, SB 1137 has no impact on existing wells and current drilling operations. Nevertheless, Plaintiff contends that it would be impossible for federal lessees to comply with the terms of their federal lease and SB 1137. Mot. at 19–21. As an initial matter, like the field preemption arguments, this argument should be disregarded because Plaintiff could have raised it in the first preliminary injunction motion and chose not to. *Kona*, 229 F.3d at 890. Even if it were proper, the argument is largely based on the hypothetical concern that, at some point in the future, production levels "may fall below" paying quantities. Mot. at 21. However if that happens, it is not because of SB 1137. The leases merely require "paying quantities;" they do not guarantee that extracting oil and gas will be profitable or that lessees will be immune from local regulations. Lessees could still meet any quantity requirements by drilling laterally to reach oil and gas resources within health protection zones via wellheads located outside of health protection zones. Simply because lessees choose not to do so because it may not be economically feasible does not mean that it is impossible to comply with the terms of the lease. *See California*, 2026 WL 878702 at *16 (Plaintiff's argument regarding the difficulty of horizontal drilling "is

grounded in the commercial impracticability theory that the Ninth Circuit rejected in *Bohmker*"). Complying with both SB 1137 and federal laws is not impossible, and therefore there is no conflict preemption.

## III. PLAINTIFF HAS NOT ESTABLISHED IRREPARABLE HARM

Plaintiff's assertion of irreparable harm is undercut by its own delay in bringing this case, the preliminary injunction motion, and the renewed motion. And because Plaintiff has failed to show that the preemption claim is likely to succeed on the merits, it cannot show that it has suffered irreparable harm. *Developmental Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) ("[I]f a plaintiff fails to show that he has some chance on the merits, that ends the matter.").

Even assuming Plaintiff could demonstrate a likelihood of success on the merits, it has not established that it will suffer irreparable harm in the absence of an injunction. While a *presumption* of irreparable harm may sometimes be warranted if there is a finding of preemption, Plaintiff cites no binding authority for the proposition that an irreparable-harm finding is automatic. To the contrary, irreparable harm depends, for instance, on the likelihood that a plaintiff's interests will *actually* be harmed, and that they will be harmed *irreparably*: "[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Daimler Truck N. A., LLC v. Cal. Air Res. Bd.*, No. 2:25-cv-02255-DC-AC, 2025 WL 3049944, at *14 (E.D. Cal. Oct. 31, 2025) (quoting *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011)). Accordingly, Plaintiff still has the burden to show that it will suffer irreparable harm in the absence of an injunction and it cannot meet that burden here for at least three reasons.

*First*, as the Court found, Plaintiff's delay in seeking court intervention belies any claim of irreparable harm. *California*, 2026 WL 878702 at *19 ("the court finds that Plaintiff's substantial delay in filing this action and seeking preliminary injunctive relief severely undercuts its assertions of irreparable harm"). Plaintiff not only delayed filing its first preliminary injunction by almost four years, but it also waited more than six months since the denial of its first motion to file this "renewed" motion. SB 1137 has now been applied statewide for the past two years—including to federal leases—with no apparent irreparable harm occurring that would require

extraordinary preliminary injunctive relief. Yet Plaintiff renews its request to the Court for that emergency remedy, with no explanation of what has changed other than a scheduled lease sale in December, which it knew would happen at some point. *See supra* Argument I. "By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). Plaintiff's own delay in bringing this case, in filing its first preliminary injunction motion, and then in bringing this "renewed" motion undercuts any argument that there is an imminent risk of irreparable harm such that any remedy Plaintiff is entitled to could not wait until the complex issues presented in Plaintiff's Complaint are fully adjudicated on a complete record.

*Second*, Plaintiff has not demonstrated the law will have an immediate effect on drilling on federal land. SB 1137 has no impact on permits that CalGEM has already approved, so drilling pursuant to those permits can continue. Nor do the challenged provisions of SB 1137 affect the operations of existing wells. A new permit is only required to begin drilling a new well or to rework a well. Yet Plaintiff has not provided any evidence that there are any new Applications for Permit to Drill (APD) pending before BLM, nor has it presented evidence that there have been any permit applications for reworking a well on federal land within a setback zone. Powell Decl. ¶ 8. In other words, for SB 1137 to have any immediate effect on federal land in California, "[m]ultiple contingencies must occur" such that the effects of SB 1137 on drilling in federal lands is "too speculative to constitute irreparable harm." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988); *see also id.* at 674 ("[P]laintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 n.7 (9th Cir. 2021) (explaining that speculative injuries do not constitute irreparable harm). This Court has already concluded that the very existence of such "uncertainties" makes preliminary injunctive relief inappropriate. *California*, 2026 WL 878702 at *20.

*And third*, Plaintiff cannot show anything beyond relatively minor "harm" it would suffer in the absence of an injunction given the mere ten percent of BLM-managed land in California that would be affected at all by SB 1137. Light Decl. ¶ 10. And even that "harm" would only be

limited to a delay in potential revenue, which hardly qualifies as irreparable. *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("a temporary loss is not irreparable"); *see also League of Wilderness Defs./Blue Mts. Biodiversity Project v. Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014) ("irreparable environmental injuries outweigh the temporary delay . . . in receiving a part of the economic benefits of the project").

Nor is there any merit to Plaintiff's suggestion that an allegation of preemption in a complaint establishes "per se" irreparable harm to the federal government, such that Plaintiff need not make any further showing. Mot. at 22. None of the cases that Plaintiff cites support an automatic finding of irreparable harm. To the contrary, *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989), involved a district court's decision to abstain from exercising jurisdiction and says nothing about "per se" irreparable harm. *Id*. at 353. And *United States v. Arizona*, 641 F.3d 339 (9th Cir. 2011) concerned clear-cut preemption involving a different and more sweeping kind of federal sovereign authority: the federal government's "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). That type of obvious preemption is not at issue here: both federal and state law permissibly and concurrently govern oil and gas operations, and the line where the federal government's exclusive land-use authority ends "will not always be bright." *Granite Rock*, 480 U.S. at 587.

Moreover, the harm to California's sovereign authority to protect its residents' health and safety outweighs any impact to Plaintiff's land-use authority, making a per-se finding of irreparable harm particularly inappropriate. This is especially true given that the enforcement of SB 1137 affects only a limited portion of federal land in California.

For these reasons, Plaintiff has not met its burden of showing that it would likely suffer irreparable harm while this case proceeds on the merits.

## IV. The Balance Of The Equities And Public Interest Weigh Strongly Against Preliminary Injunctive Relief

The balance of equities and the public interest also militate against a preliminary injunction. These factors merge when the government is a party. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). In undertaking its inquiry, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Here, the health harms to residents living, working, and attending school close to potential oil and gas well drilling sites, and the harms to California's ability to protect the health of its citizens, far outweigh the abstract harms and monetary injuries cited by Plaintiff.

First and foremost, an injunction would leave Californians vulnerable to the health impacts (in the map below, verified health protections zones in purple and potential health protection zones in pink) that the Legislature sought to avoid, simply because they live or spend their days closer to a "federal square" (the red, blue, and yellow squares) on a checkerboard of federal and state lands rather than a "state square." *See* Powell Decl. ¶ 11, Exhs. 1 and 2 (providing examples of oil fields and oil wells on BLM-managed land within 3,200 feet of schools and neighborhoods); Light Decl. ¶ 8, Exhs. 1 and 2 (showing the patchwork of BLM leases among private and state land near Bakersfield).




As discussed above, studies have shown that those individuals are exposed to higher concentrations of pollutants and experience adverse birth and respiratory outcomes.

Plaintiff ignores these adverse health impacts, arguing instead that the public interest would be served by "keep[ing] lessees and operators solvent." Mot. at 24. By arguing that the economic interests of certain businesses outweigh the need to protect public health, Plaintiff gets the public-interest inquiry backward. The health harms that residents in proximity to oil and gas operations will suffer if SB 1137 is enjoined are exactly the types of harms that courts consider to be irremediable. *See Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 851 (D. Alaska 2012), *aff'd*, 709 F.3d 1281 (9th Cir. 2013) ("It is well established that demonstrated risks to health and safety constitute the type of irreparable harm for which there is no adequate remedy at law.") (citing cases).

Moreover, the federal government's sovereign interests are not the only sovereign interests at stake in this matter. "[B]oth the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona*, 567 U.S. at 398. Enjoining SB 1137 would inflict a separate irreparable harm on California by preventing it "from effectuating [a] statute[] enacted by representatives of its people." *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

Having failed to show that it is likely to suffer *any* immediate and irreparable harm if SB 1137 remains in effect, much less a harm that would outweigh the harm caused to the public and the State if SB 1137 were enjoined, Plaintiff has not established that the equities and public interest favor a preliminary injunction.

**CONCLUSION**

Defendants respectfully request that the Court deny Plaintiff's renewed motion for a preliminary injunction.

Dated: November 3, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/s/ Jerry T. Yen*

JERRY T. YEN
CHRISTOPHER J. KISSEL
Deputy Attorneys General
*Attorneys for Defendants State of California, Governor Gavin Newsom, California Department of Conservation, Geologic Energy Management Division, and Doug Ito*

# CERTIFICATE OF SERVICE

Case Name: **United States of America v. State of California, et al.** No. **2:26-cv-00107**

I hereby certify that on November 3, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**
- **DECLARATION OF LLOYD LIGHT IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION MOTION**
- **DECLARATION OF TREY POWELL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION MOTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 3, 2026, at Sacramento, California.

| Ksenia Lavrushchak | */s/ Ksenia Lavrushchak* |
|---|---|
| Declarant | Signature |