UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>STATE OF CALIFORNIA, et al.,<br>Defendants. | No. 2:26-cv-00107-DC-SCR<br><br>ORDER<br>(Doc. No. 34) |

This matter is before the court on the renewed motion for preliminary injunction filed by Plaintiff on October 16, 2026. (Doc. No. 34). Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 42.) For the reasons explained below, the court will deny Plaintiff's motion.

## BACKGROUND

On March 31, 2026, the court issued an order denying Plaintiff's motion for preliminary injunction because Plaintiff had not met its burden of showing it was likely to succeed on the merits of its preemption claim or that it was likely to suffer irreparable harm in the absence of the requested injunction. (Doc. No. 25.) Specifically, Plaintiff sought an injunction preventing Defendants from enforcing Senate Bill No. 1137 ("SB 1137")—which prohibits the drilling of new oil and gas wells, or the redrilling/deepening of existing wells, within 3,200 feet of "sensitive receptors" (e.g., residences, schools, hospitals). Rather than repeat the background and analysis

sections from the March 31, 2026 order herein, the court incorporates by reference that order in its entirety.

Nearly seven months after that order issued, Plaintiff filed the pending "renewed" motion for preliminary injunction. (Doc. No. 34.) Despite its title and styling, Plaintiff's motion is more aptly construed as a motion for reconsideration because Plaintiff essentially asks this court to reconsider its March 31, 2026 order. (Doc. No. 34.) In doing so, Plaintiff repackages many of the same conflict preemption arguments and assertions of irreparable harm that this court already thoroughly considered and rejected. Plaintiff asserts that the motion is "brought because materially changed circumstances make immediate relief necessary," specifically that "federal oil and gas leasing in California, paused since November 2022, will resume this December [1, 2026]" with quarterly lease sales thereafter. (*Id.* at 8.) Plaintiff contends that "[u]nless enjoined, SB 1137 will deter bidders, reduce competition and bid amounts, and prevent some parcels from being leased or developed, frustrating the United States' land-use objectives and depriving it of bonus bids, rents, royalties, and other revenues." (*Id.*) According to Plaintiff, "[t]hese harms will arise with the December 1, 2026, sale and compound with each quarterly sale thereafter, as those sales are mandated by the [Mineral Leasing Act] and implementing regulations." (*Id.* at 8–9.)

On November 3, 2026, Defendants filed an opposition to the pending motion, in which they emphasize that there is no basis for reconsideration of the court's March 31, 2026 order. (Doc. No. 38.) In particular, Defendants emphasize that Plaintiff's intent to resume lease sales and anticipation of reduced competition in future lease sales due to SB 1137 was already known to the parties and the court when that order issued. (Doc. No. 38 at 10–11.) Thus, the lease sale date of December 1, 2026 is a new fact, but it is not a material fact that would warrant revisiting the court's analysis that already accounted for the resumption of lease sales. (Doc. No. 38 at 10–11.) On November 13, 2026, Plaintiff filed a reply to Defendants' opposition, in which Plaintiff maintains that the imminent December 1, 2026 lease sale and the quarterly sales thereafter constitute a substantial development warranting preliminary relief. (Doc. No. 41.)

In addition, on November 3, 2026, Proposed Intervenors Center for Biological Diversity, Food & Water Watch, Friends of the Earth, Los Padres ForestWatch, and Sierra Club ("Proposed

Intervenors") filed an opposition to Plaintiff's pending motion. (Doc. No. 37). As the court did previously, the court considers the Proposed Intervenors' opposition as an amicus brief.[1] (*See* Doc. No. 25 at 13.) Plaintiff did not file a separate reply to Proposed Intervenors' opposition and chose not to address their arguments in its reply to Defendants' opposition. (*See* Doc. No. 41 at 6 n.1.)

## ANALYSIS

### A. Whether to Construe Plaintiff's Renewed Motion as a Motion for Reconsideration

As a preliminary matter, the court will first address Plaintiff's contention in its reply brief that the court should not treat its motion as a motion for reconsideration because its renewed motion is proper and "is not an effort to relitigate the record that existed when the Court denied" the prior motion. (Doc. No. 41 at 6.) Plaintiff asserts that courts routinely consider renewed preliminary injunction motions and evaluate such motions under the preliminary injunction standard, not the standard applicable to motions for reconsideration, but Plaintiff cites to only two district court cases, which are both inapposite, and to one appellate decision from another circuit. (*Id.* at 9–10.)

First, Plaintiff cites the district court's decision in *Kory v. Bonta*, 841 F. Supp. 3d 1130 (E.D. Cal. Aug. 5, 2026), but in that case, the defendant argued that the court was precluded from reconsidering its prior denials of preliminary injunctive relief due to the law-of-the-case doctrine—a doctrine that is not invoked in this case. Further, the court in *Kory* rejected that argument based on the recognized exception to that doctrine for when reconsideration is appropriate due to intervening controlling authority because two Supreme Court opinions impacting the court's analysis of the plaintiff's likelihood of success on the merits were issued after the court's earlier denial of preliminary injunctive relief. 841 F. Supp. 3d at 1139–40. Thus, here, even if the court viewed the pending motion through the lens of the law-of-the-case doctrine, there are no intervening authorities or changes in applicable law that would make reconsideration appropriate. Simply put, Plaintiff's reliance on the decision in *Kory* is unavailing.

---

[1] Proposed Intervenors' motion to intervene (Doc. No. 10) was taken under submission and remains pending before the court to be addressed in a separate order.

Plaintiff also cites a sister court's decision in *Chegg, Inc. v. Doe*, No. 22-cv-07326-CRB, 2023 WL 7392290 (N.D. Cal. Nov. 7, 2023), as an example of a court granting a renewed motion for preliminary injunctive relief where that motion presented "a more developed factual record." Doc. No. 41 at 10.) However, after the prior denial of preliminary injunctive relief in that case, the plaintiff amended its complaint to add a new claim, for which the court had not previously assessed the likelihood of success on the merits. *Chegg*, 2023 WL 7392290, at *1–2. Here, Plaintiff has not amended its complaint to add new claims such that the court would need to evaluate Plaintiff's likelihood of success on the merits in the first instance as to those claims. Further, in *Chegg*, the plaintiff had previously satisfied some of the *Winter* factors and demonstrated a likelihood of success on the merits of some of its claims but fell short in demonstrating irreparable harm—a shortcoming the court recognized could be addressed with further evidence and indeed, the court invited such further submission. *Chegg, Inc. v. Doe*, No. 22-cv-07326-CRB, 2023 WL 4315540, at *6 (N.D. Cal. July 3, 2023) ("Chegg has not demonstrated a significant threat to its business posed by Homeworkify, or actual evidence of loss of goodwill or reputation as a result of Homeworkify's use of Chegg's marks or solutions. Certainly, the scraping of millions of Chegg's solutions and offering those solutions up for free on a competing site is troubling and might indeed amount to irreparable harm."). Even on the claims for which the court in *Chegg* had concluded the plaintiff had not shown a likelihood of success, the court nevertheless invited further attempts to make such a showing. *See id*. at *3, n.4 ("Chegg only speculates that Homeworkify has continued to access Chegg content since it ordered Homeworkify to cease and desist in November; it does not provide any evidence that Homeworkify is in fact doing so. Of course, if Chegg can persuasively demonstrate that Homeworkify is behind the cyberattack Chegg.com recently experienced, that might change this conclusion."). Ultimately, the court in *Chegg* denied the original motion for preliminary injunction "without prejudice to a future motion that addresses the concerns outlined" in that order. 2023 WL 4315540, at *6. Unlike in *Chegg*, this court denied Plaintiff's motion for preliminary injunction because Plaintiff failed to show a likelihood of success on the merits of its preemption claim and failed to show it is likely to suffer irreparable harm, and the court did not

implicitly or explicitly invite further attempts by Plaintiff to make those showings. Thus, here too, Plaintiff's reliance on the decision in *Chegg* is unavailing.

Plaintiff's citation to the Fourth Circuit's unpublished decision in a prisoner civil rights case, *Bratcher v. Clarke*, 725 F. App'x 203 (4th Cir. 2018), fares no better because that decision vacated the district court's denial of a renewed motion for preliminary injunction due to the district court's failure to comply with the requirement in Federal Rule of Civil Procedure 52(a)(2) to state its findings and conclusions. 725 F. App'x at 206 (citing Fed. R. Civ. P. 52(a)(2) ("In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.")). Recognizing that the defendant had not yet answered the complaint nor had an opportunity to oppose the motion for preliminary injunction, the district court found the motion premature, listed the *Winter* factors, but then simply stated, "[d]espite his conclusory assertions to the contrary, plaintiff has not shown any of these factors, and his motion will be denied, without prejudice to renewal at a later date." *Bratcher v. Clarke*, No. 1:17-cv-474-AJT-MSN, 2017 WL 5640826, at *1 (E.D. Va. Aug. 9, 2017), *vacated and remanded*, 725 F. App'x 203 (4th Cir. 2018). The circuit court rejected the district court's conclusion that the renewed motion was premature and explained that "in the absence of specific factual findings and conclusions of law in the [district court's] order, we are constrained to conclude that the district court abused its discretion in denying [the plaintiff's] renewed motion." *Bratcher*, 725 F. App'x at 206. Importantly, the circuit court emphasized that the plaintiff raised a new fact in his renewed motion that had not been contemplated by the court in its prior order denying injunctive relief, and for that reason, the circuit court could not rely on the prior order in reviewing the order denying the renewed motion. *Id.* ("While the district court's [prior] order contained findings and conclusions, the district court primarily relied on the fact that Bratcher had not alleged that any of his incoming mail had been destroyed in denying the motion. However, in his renewed motion for preliminary injunction, Bratcher stated that several pieces of his mail had been destroyed, a fact not contemplated in the court's [prior] order."). Thus, contrary to Plaintiff's position otherwise, the decision in *Bratcher* does not stand for the proposition that courts cannot construe renewed motions for preliminary injunctive relief as motions for reconsideration and must instead analyze

every renewed motion for preliminary injunction under the *Winter* factors and state their findings and conclusions for granting or denying such motion.

In sum, none of the authorities relied upon by Plaintiff serve to preclude the court from construing the pending motion as a motion for reconsideration, especially given that there have been no intervening changes in the law, no amendments to the pleadings to add claims, no invitations by the court for Plaintiff to file further motions for injunctive relief, and no new facts that were not already contemplated by the court in its March 31, 2026 order.

Contrary to Plaintiff's characterization of its motion as being based on a "significantly expanded factual record," the court does not view the evidence submitted in support of the pending motion as demonstrating any substantially changed circumstances. As noted above and as acknowledged by Plaintiff in its reply brief (Doc. No. 41 at 7), the fact that BLM would lift the pause and resume oil and gas leasing in California was well known to the parties and the court when the preliminary injunction motion was denied. Indeed, the court's March 31, 2026 order noted that BLM was in fact taking affirmative steps toward reinitiating oil and gas leasing. (Doc. No. 25 at 8, n.7.) Moreover, BLM's pause on oil and gas leasing was one of several reasons, not the sole reason, the court found Plaintiff had "not shown that the risk of irreparable injury is likely nor that the issuance of the requested preliminary injunction would serve to prevent such immediate threatened injury." (*Id.* at 32–35.)

Further, aside from the new fact of the December 1, 2026 lease sale date, Plaintiff asserts that it has provided the court with "additional, detailed evidence," but Plaintiff relies on declarations from many of the same declarants who provided declarations in support of their first motion for preliminary injunction and their statements remain largely unchanged. (Doc. No. 41 at 6.) In apparent reaction to the court's noting that declarant Matthew Warren (BLM's Oil and Gas Program Lead) made statements of prediction of what *might* happen and quoting his word choice of "could" and "may," Mr. Warren's declaration in support of the renewed motion makes those same statements albeit swapping out those words for "is expected to," "anticipates," and "will." (Compare Doc. No. 4-3 at 7 with Doc. No. 34-12 at 10-11.) For example, Mr. Warren previously declared that "[f]ederal revenues from oil and gas leasing in California *may* decline as a direct or

indirect result of SB 1137's setback provision, which *could* deter bidders from competing for Federal leases," and "[t]hese revenue losses *could* compound over time . . . ." (Doc. No. 4-3 at ¶ 25) (emphasis added). In the declaration filed in support of the pending motion, Mr. Warren now declares "[f]ederal revenues from oil and gas leasing in California *is expected* to decline both directly and indirectly, as a result of SB 1137's setback provision" . . . "because BLM *anticipates* [SB 1137] *will* deter bidders from competing for Federal leases," and "[t]hese revenue losses *are expected* to compound over time . . . ." (Doc. No. 34-12 at ¶ 31) (emphasis added). These slight modifications are hardly the kind of "new facts" on which a renewed motion for preliminary injunction may be warranted.

Even the declarations from the operators who added statements to their declarations to address the impending December 1, 2026 lease sale do not offer any new, material facts. For example, operator E&B's declaration states that "E&B is currently considering whether to bid on a federal lease . . . that is currently part of BLM's December 2026 sale," and for which a portion of that lease falls within an HPZ, though notwithstanding SB 1137, E&B's planned drilling activities would not occur within that portion. (Doc. No. 34-15 at 33.) Yet "the presence of the HPZ nevertheless diminishes the value of the lease," and "[a]s a result, E&B is questioning whether it will submit a bid at all on that lease," and if it decides to bid, "it will bid less than it would have in the absence *of the HPZ*." (*Id.*) (emphasis added). Notably, E&B's decision on whether to bid and at what price is not impacted by the absence or presence of preliminary injunctive relief; rather, E&B's decision is impacted by the presence of the HPZ, which will not be altered or remedied by the issuance of any preliminary injunctive relief. Similarly, operator Termo does not offer any new material facts with regard to the upcoming lease sale. Consistent with its statement in its prior declaration that "Termo has not bid on leases located on federal lands within HPZs since the enactment of SB 1137 and the adoption of related regulations, because those lands cannot be fully developed for oil and gas extraction," (Doc. No. 4-7 at 3), Termo now states that its "management team made an affirmative determination not to investigate or pursue any of the leases on federal land that have been made available for bids in the upcoming December 2026 lease sale, because it is my understanding that many of those parcels are located

within HPZs and therefore Termo would not be able to obtain [Notices of Intention] to drill wells at those locations." (Doc. No. 34-16 at ¶ 15.) Consequently, Termo's decision not to investigate or bid on the upcoming lease sale is not actually a new fact. The court was aware of these operators' positions at the time it denied Plaintiff's motion for preliminary injunction.

Lastly, Plaintiff submitted a declaration from a new declarant, Shawn Kerns, a consultant in the oil and gas industry who provides clients with valuations of potential lease developments. (Doc. No. 34-14.) But that declaration likewise does not provide the kind of significant new facts that would warrant treating Plaintiff's motion as a proper renewed motion for preliminary injunction. Rather, Mr. Kerns provides more technical explanations regarding the risk-adjusted valuations underlying the positions taken by the operators in their declarations, positions that were already known to the court. (*Id.*) Further, although Mr. Kerns posits that "[a] preliminary injunction would provide meaningful relief even though it is temporary," none of his reasons relate to the upcoming December lease sale. (*Id.* at ¶ 16.) Moreover, the only reason he proffers that relates to leasing on federal lands—that "an injunction would increase the probability of near-term development, making it more likely that bidders participate in the auction and submit higher bids," (*id.*)—is both speculative and contradicted by the operators' own declarations as discussed above.

For all these reasons, there is no basis to entertain Plaintiff's motion as a renewed motion for preliminary injunction, akin to a second bite at the apple. Rather, the court will construe Plaintiff's motion as seeking reconsideration of its March 31, 2026 order and apply the appropriate standard for motions for reconsideration.

**B. Whether Reconsideration is Appropriate**

"A district court has authority to reconsider its own pretrial decisions." *California v. Del Rosa*, No. 2:23-cv-0743-KJM-SCR, 2025 WL 2591516, at *2 (E.D. Cal. Sept. 8, 2025) (citing *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)). Reconsideration of orders ruling on motions for preliminary injunctive relief are governed by Federal Rule of Civil Procedure 59(e). *Nat'l Ass'n of Wheat Growers v. Zeise*, No. 2:17-cv-2401-WBS-EFB, 2018 WL 3000488, at *1 (E.D. Cal. June 12, 2018) (citing *Credit Suisse First Bos.*

*Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005)). As the Ninth Circuit has instructed,

> [a]lthough Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.

*Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations omitted). Thus, "motions to reconsider are not vehicles permitting the unsuccessful party to rehash arguments previously presented." *Del Rosa*, 2025 WL 2591516, at *2 (citation modified). "The movant bears the burden of proving reconsideration is proper." *Eggleston v. Orellana*, No. 2:26-CV-01843-FLA-SSC, 2026 WL 872693, at *1 (C.D. Cal. Mar. 26, 2026). "Whether or not to grant reconsideration is committed to the sound discretion of a court." *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Further, in this district, Local Rule 230(j) requires that "[w]henever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, counsel shall . . . set[] forth the material facts and circumstances surrounding each motion for which reconsideration is sought." L.R. 230(j). This includes stating "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and why the facts or circumstances were not shown at the time of the prior motion." L.R. 230(j)(3)–(4).

As discussed above, Plaintiffs have not proffered any newly discovered evidence or pointed to any intervening change in controlling law, nor have there been any arguments made that the court committed clear error. The evidence Plaintiff submits to support its pending motion consists largely of evidence that was already before the court in connection with Plaintiff's prior motion for preliminary injunction. The "new" evidence consists of BLM setting a date certain to resume oil and gas leasing in California, but the fact that BLM would resume lease sales was

already contemplated by the court in its March 31, 2026 order. (*See* Doc. No. 25 at 8 n.7, 34.) Moreover, Plaintiff attempts to "rehash" its conflict preemption arguments (Doc. No. 34-1 at 23–26), even though the court already rejected those arguments in the March 31, 2026 order. (Doc. No. 25 at 24–30.) Nothing about BLM's setting of a date certain to resume leases warrants revisiting those arguments or the court's analysis on them. Further, although Plaintiff raises new legal arguments in the pending motion, specifically arguing that SB 1137 is preempted due to field preemption and impossibility-conflict preemption (Doc. No. 34-1 at 18–22, 27–28), those arguments could have been raised by Plaintiff in their prior motion. In other words, the "new" fact that leasing will resume on December 1, 2026 is not a fact that gave rise to those additional preemption arguments such that they could not have been raised sooner in the litigation.

Having considered the parties' arguments under the standards applicable to motions for reconsideration, including the Local Rules, the court finds Plaintiff has not shown that reconsideration of the court's March 31, 2026 order is warranted. Plaintiff's motion will therefore be denied.

**CONCLUSION**

For the reasons explained above, Plaintiff's "renewed" motion for preliminary injunction, construed as a motion for reconsideration, (Doc. No. 34) is DENIED.

IT IS SO ORDERED.

Dated: **November 24, 2026**

Dena Coggins
United States District Judge